### SMITH and others vs. LAWRENCE.

Where S. bequeathed his personal estate to his son J. W. S., and made L. executor of his will, and the son subsequently died, having previously appointed L. and three other persons his executors; *Held*, that the co-executors of L., under the will of the son, had a right to cite L. to account before the surrogate, as the executor of S., to enable them to ascertain the amount due from him to their testator, under the will of S. the original testator.

*Held also*, that L., upon being thus cited to account, could have a final settlement of his accounts, as the executor of S., in the same manner as if he had been cited to account by J. W. S. the son in his lifetime.

*Held further*, that the amount which should be found in the hands of L., upon such accounting, belonging to the estate of J. W. S. as the legatee of his father, would be assets in the hands of L. as one of the executors of the son.

*Held also*, that the fact that the executor of the father was also one of the executors of the son, was not a valid objection to the jurisdiction of the surrogate to cite him to account, upon the application of his co-executors under the will of the son.

But it seems that, in such a case, the surrogate, after the account of L., as the executor of the father, had been rendered and settled, would not be authorized to decree payment, to his co-executors, under the will of the son, of the balance found due from him, as the executor of the father, to the estate of the son.

In a court of law, one executor or administrator cannot sue his co-executor, or co-administrator, to recover a debt due from the latter to the estate of the testator or intestate.

Smith *v.* Lawrence.

But a court of equity, upon a bill filed by an executor against his co-executor, can settle the question as to the fact of the indebtedness of the latter, to the estate of which he is one of the executors, and the amount of such indebtedness, without divesting the defendant of the possession of the fund due from him to the estate which is represented by both parties to such suit; and when the amount of the defendant's indebtedness is ascertained, the court can direct such disposition of the fund, due from the defendant, as justice and equity may require.

THIS was an appeal from an order of the surrogate of the county of Suffolk. Elias Smith died and made the respondent, L. W. Lawrence, the executor of his will, and bequeathed his personal estate to J. W. Smith. Subsequently, J. W. Smith also died, having by his will appointed the respondent, L. W. Lawrence, and the appellants, J. L. Smith, C. Smith and L. Livingston, jointly, his executors; all of whom took out letters testamentary thereon. The respondent having neglected to render an account of the estate of the first testator, his co-executors of the will of J. W. Smith, applied to the surrogate by whom the letters testamentary were granted to the respondent, for an order requiring the respondent to render such account; and he was duly cited to render his account accordingly. The parties appeared before the surrogate, and the respondent resisted the application, upon the ground that, as he was a co-executor with the appellants of the estate of the legatee, he could not be called upon by them to render an account, in the surrogate's court, of the estate of which he was the sole executor. The surrogate sustained the objection, and dismissed the application.

*L. Livingston,* for the appellants.

*H. Ketchum,* for the respondent.

THE CHANCELLOR. The statute provides that an executor or administrator may be required to render an account of his proceedings, by an order of the surrogate, to be granted upon an application from some person having a demand against the personal estate of the decedent, either as creditor, legatee, or next of kin, or by some person in behalf of a minor having such claim, or without such application. (2 *R. S.* 92, § 52.) This

provision of the revised statutes is not new. For this court has decided that, previous to the revised statutes, the surrogate had power to call an executor, as well as an administrator, to an account; and also to compel a distribution of the personal estate of the decedent according to law, or to the directions of the testator. (*Foster & Bouck* v. *Wilber & Olmstead,* 1 *Paige's Rep.* 537.)

Some doubt is thrown upon the power of the surrogate to decree distribution, where the executor or administrator does not apply for a *final settlement* of his account, by the peculiar phraseology of the 71st section, of the article of the revised statutes relative to the duties of executors and administrators, in rendering an account and in making distribution to the next of kin. (2 *R. S.* 95.) There can be no doubt, however, as to the right of any person interested in the estate to call the executor or administrator to account, under the provisions of the fifty-second section of that article; even where such executor or administrator neglects or refuses to take the necessary proceedings to make the account final, so as to save him from further litigation and trouble.

In the present case the surrogate probably will not have the power, after the account shall have been rendered, to decree the payment of any balance which may be found due to the estate of J. W. Smith, the legatee, from the estate of E. Smith. But upon the settlement of the accounts of the respondent, as the sole executor of E. Smith, the balance found due to the estate of the legatee will be assets in the hands of the respondent, as one of the co-executors of that estate, and the creditors, and others entitled to share in that estate, will then be enabled to understand their rights. The respondent is, therefore, bound to render such account, unless it is clear that the fact, that he is such co-executor of the will of the legatee, is an objection to the jurisdiction of the surrogate to call him to account, upon the application of his co-executors; which question I will now proceed to consider.

In the common law courts one executor, or administrator, cannot bring a suit against his co-executor, or co-administrator, to recover a debt which was due from the latter to the testator, or

intestate.    For each has the same right to the possession of the fund which belongs to both, as the representatives of the estate of which they are joint trustees.    And the effect of a common law judgment, in favor of one against the other, would be to give to the former the right to issue an execution and transfer the whole fund to his own exclusive possession.    A court of equity, however, from its peculiar mode of administering justice, can settle the questions as to the fact of indebtedness, and as to the amount due from one of the executors to the estate of which both are trustees, whenever the decision of those questions becomes necessary, without changing the possession of the fund.    And when the amount of such indebtedness is ascertained, the court may make such disposition of the fund as justice and equity shall then require.    (*Decker* v. *Miller,* 2 *Paige's Rep.* 150.)

The object of proceeding before the surrogate, in the present case, appears to be for the purpose of ascertaining the amount of the fund in the hands of the respondent, as the sole executor of Elias Smith, and which belongs to the estate of J. W. Smith, as the residuary legatee.    And I see no reason why that cannot be done in this proceeding, before the surrogate, as well as in the more expensive mode of filing a bill in this court.    The respondent, too, if he wishes it, may have a final settlement of his account, as the executor of E. Smith, upon this proceeding, and with the same effect as if he had been cited to account by the legatee himself.    For the statute authorizes an executor, or an administrator, whenever he is required to render his account, either upon the application of some person interested in the estate of the decedent, or upon the order made by the surrogate without such application, to apply for a citation requiring all the creditors, next of kin and legatees, to attend the settlement of the account; so that the same may be final and conclusive as to all persons interested in the estate of the testator or intestate. (2 *R. S.* 93, § 60.)    It is true, the statute directs that when the account of the executor, or administrator, has been rendered and finally settled, if it appears that any thing remains in his hands to be paid or distributed, the surrogate shall make a decree for the distribution thereof, to the persons entitled to the same, ac-

cording to their respective rights. (*Idem*, 95, § 71.) But the fact that the executor is himself entitled, with others, to the whole, or to a part, of the fund to be distributed, as one of the representatives of another estate, forms no objection to the making of such a decree, by the surrogate for distribution. Indeed the same apparent difficulty might have occured if the executor had been cited to account by a creditor of the testator. For, the surplus of the estate, after satisfying the creditors' claims, would belong to the executors of the residuary legatee, of which executors the appellant is one. In either case, the proper decree, to be made by the surrogate, upon a final settlement of the account of the executor of E. Smith, would be to declare, and determine the balance, in the hands of the executor of E. Smith, belonging to the estate of J. W. Smith as the residuary legatee; and to direct such executor to apply it, in the due course of his administration as one of the executors of the estate of such residuary legatee. And then, when he was afterwards called to account as one of the executors of such legatee, the decree of the surrogate would be the evidence of the amount due from him, to the estate of such legatee, in his character of executor of the estate of Elias Smith.

If a bill in chancery was to be filed, for an account of the estate of E. Smith, and to ascertain the balance in the hands of his executor, belonging to the estate of the residuary legatee, it must necessarily be filed by a part of the executors, instead of the whole. And I can see no valid objection whatever to a similar proceeding before the surrogate, where the object is the same. In the case of *Glen* v. *Webster and Wilson*, (2 *Lee's Eccl. Rep.* 31,) which came before the arches court of Canterbury, in 1754, an executrix, who was also interested in the estate as residuary legatee, was permitted to sustain a suit in the ecclesiastical court, against her co-executors, for her share of the estate, although no such suit could have been sustained in a court of law. And in *Paul* v. *Nettleford*, (2 *Adams' Eccl. Rep.* 237,) Sir John Nicholl sustained an application, by an executor, to the prerogative court, against his co-executor, for an inventory of the estate of the testator. It is true the party obtaining the citation, in each of those cases, had a personal

interest in the application. But in the case of *Huggins* v. *Alexander*, which came before the prerogative court more than one hundred years since, the executrix was compelled to exhibit an inventory of the estate of the testator, upon the application of her co-executor, who had no personal interest in the estate. And similar decisions appear to have been made, in the same court, in the cases referred to by the advocates of the applicant, upon the argument of the case last mentioned. (2 *Adams' Eccl. Rep.* 238, *n. a. See also Lucas* v. *Seale,* 2 *Atk.* 56.)

Under the provisions of the statute, the surrogate is authorized to call the executors or administrators to account, without an application by any one, by a proceeding instituted by him *ex officio.* And it is probably his duty to do so, where infants are concerned, after a reasonable time has elapsed for the settlement of the estate; especially if he has reason to apprehend that the interest of the minors requires such an *ex officio* proceeding. In the present case, I think, the appellants, in their characters of executrix and executors of J. W. Smith merely, had such an interest in the estate of E. Smith as to authorize them to cite their co-executor, in his character of representative of that estate, to account for the administration thereof, to enable them to ascertain the amount in his hands, as such representative, which justly belonged to the estate of their own testator.

The order dismissing the proceedings must therefore be reversed, with costs to be paid by the respondent. And the proceedings must be remitted to the surrogate, with directions to him to enter an order requiring the respondent to render an account of his proceedings, as the executor of Elias Smith; and that the surrogate proceed upon such order as directed by the statute, and according to the practice of the court in such cases.