SAMUEL PETTY et al., administrators of Susan Petty, deceased, appellants,

*v.*

MARY C. YOUNG, respondent.

1. The court of chancery has jurisdiction of a suit instituted by administrators against their co-administrator, to ascertain and settle the amount due upon a claim made by the co-administrator against the estate of the decedent.

2. A promissory note given by a widow to her adult daughter, for domestic service theretofore rendered by the daughter, is evidence that the service was rendered upon an understanding that it should be paid for, and, in the absence of evidence to the contrary, such a note will be upheld as having sufficient consideration.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

I regret to say that there seems to be no path that I can discover which will lead me to advise a decree looking towards some final adjustment of the controversy between these parties.    The

bill is so framed that, as I understand the evidence, I can only advise that the bill be dismissed.   The defendant had it in her power to frame an issue by way of cross-bill, and thus, in one suit, to settle her rights.   She has simply answered the allegations in the bill.   If the court had the power, it ought to require the parties in such case to make an issue that would meet the whole case and warrant a final adjudication ; for, from all appearances, the merits of the case are before the court.   Such observations would be as much out of place as they are unavailing, were it not for the interest that the public have in making all reasonable limits to litigation.

Susan Petty died at the age of seventy-eight years.   She left surviving her three sons and a daughter.   Two of the sons and the daughter undertook to administer upon her estate.

The mother had given the daughter, Mary, a note for $3,000, dated October 13th, 1882.   She died in January, 1885.   Mary presented a claim to her brothers, as administrators, for the amount of principal and interest of this note.   They filed the bill in this cause against her, alleging undue influence in obtaining the note, and that the mother was not competent to transact any business at the time of giving it, and that it was procured to be given through fraud, and that it is wholly without consideration.   There is also an allegation that Mary pretended that the consideration of the note was services rendered to her mother, followed by a charge that no such services were ever rendered.

The prayers of the bill are that Mary may discover and set forth any agreement that was made respecting such service, and any account that she may have for such service or any other consideration for such note, and that she may be restrained from assigning the note, and also from prosecuting any action at law against the complainants to recover the amount due thereon, and for general relief.

It will be perceived that the complainants seek simply to restrain Mary from realizing anything on the note.   There is no offer to pay in case it should appear to be equitable and just to allow her the amount of the note or a part of it.

Each of the allegations in the bill touching the validity of this

note is fully denied by the answer. This put the complainants to their proof, and, in my judgment, they have failed in every particular. The intestate was old and infirm in body, but not without a clear comprehension of her own business affairs. The testimony of all of the witnesses produced by the complainants shows this. It was urged that because she did not attend to the details of loaning her money she had grown feeble and incompetent. Not at all. This is strong proof of her continued ability and good sense. At such times she either called in her son or referred the party with whom she chose to deal to him, and this she had done for many years before the note was given. If this transaction can be impeached on any such ground, then most likely many others have no firmer foundation.

But the mother was equally prudent or cautious on the occasion of giving to Mary the note for $3,000. She had made several attempts to have a will prepared. For this purpose she had consulted her physician, and about two weeks before the note was executed she instructed him to draw a will for her, giving to him the particulars. On the day that the note bears date, he called upon her with what he had prepared for her. Among other things she had directed him to give Mary a legacy of $2,000. This he had done. But she directed him to alter it to $3,000, and gave her reasons therefor. At this time some trouble arose about witnesses to the execution of the will, and the old lady requested the doctor to draw the note now in question. This he did, and she executed it and gave her reasons for so doing.

Of course such transactions between aged parents and their children are always carefully scrutinized by the courts. It must appear that everything was or is fair, reasonable and just. The courts will not allow the aged to be unduly influenced, or advantage to be taken of their weakness and infirmity. But I do not see that these wholesome rules have been at all violated in this case.

Upon the question of consideration enough appears, independently of the claim for services, to require the court to pause a long time before decreeing that there was no consideration. It is in evidence that the mother said many times that she had never paid Mary the purchase price for her interest in the land of which

her husband and Mary's father died seized, and which she had bought of Mary, which was about $1,000. The evidence is that the mother intended to secure this sum, and the interest thereon from 1869, to Mary. I make these observations, not to show that I have any judgment or opinion as to the merits of the cause, but to show how inequitable it would be for the court to attempt now to restrain Mary from taking any steps towards collecting the amount which may be found to be due on this note.

It is very true that I do not know what may be in the mind of counsel respecting the merits of this dispute, nor yet what they may conceive to be the equitable rights of the parties, which can be hereafter presented, in case the controversy shall be renewed; but so strongly do I feel that the whole discussion should terminate with these proceedings, and that it is the plain duty of counsel so to fashion the pleadings that such may be the result, that I will give the defendant an opportunity to apply for an order to open the decree which I shall advise, and for leave to amend her answer by way of cross-bill, praying for such relief as she may be advised, provided such application be made within thirty days after a service of a copy of the decree upon her solicitor.

I will advise that the bill be dismissed, with costs.

*Mr. L. D. Taylor* and *Mr. J. G. Shipman,* for appellants.

*Mr. W. H. Morrow,* for respondent.

The opinion of the court was delivered by

Dixon, J.

Samuel Petty, Alfred Petty and Mary C. Young are children and administrators of Susan Petty, deceased. The present bill was filed by Samuel and Alfred against Mary, setting up that she was the holder of a promissory note, dated October 13th, 1881, made by Susan, for the payment of $3,000, with interest, on April 1st, 1883, to Mary or her order, and alleging that such note was fraudulently procured by Mary, was without considera-

42

tion, and was invalid. The bill prays that Mary may be decreed to surrender the note as void; but that, if the court shall find the note to be supported by a legal consideration, then, according to the interpretation which the complainants now put upon their bill, an account is sought. The vice-chancellor adjudged that the note was valid; but, owing to the ambiguity of the terms in which an account is prayed, declined to ascertain the amount due upon it, and advised the dismissal of the bill. From the decree thereupon made, the complainants appeal, insisting that the note is void, or, if valid, then the amount due should be settled in equity.

The jurisdiction of a court of equity to entertain a suit by administrators against their co-administrator, and to decide questions as to the fact of indebtedness, and the amount owing between the decedent and the co-administrator, is clear. *Smith* v. *Lawrence, 11 Paige 206; Peake* v. *Ledger, 8 Hare 313; Ransom* v. *Geer, 3 Stew. Eq. 249.* Inasmuch, therefore, as the cause seems to have been tried on the idea that the court could, if necessary, settle the amount of indebtedness, we have concluded to give to the bill the interpretation for which the complainants contend, and so to decide the whole controversy.

The evidence satisfactorily shows that the note was honestly obtained, and for a valuable consideration. In 1869, Mary had joined with her mother in conveying land, of which her father died seized intestate. The price of Mary's share of this land had been received and retained by her mother; this, with interest to the date of the note, amounted to about $1,900, and formed part of the consideration. The balance appears to be for compensation to Mary for service rendered to her mother, a widow, during some twelve years prior to the maturity of the note, and after Mary had become of age. Of course, this service might have been rendered out of filial affection solely, and would be assumed to have been so rendered in the absence of evidence to the contrary; but the giving of the note constitutes such evidence. On its face it purports to have been given " for value received," and, even without these words, it would imply that every dollar promised by it was for an equivalent. *1 Pars. on Cont. 249.*

There is no evidence in the cause to rebut this presumption. It must, therefore, be regarded as established that the service, for which the note was in part given, was rendered upon an under- standing that it should be paid for, and the note indicates the price upon which the parties agreed. Hence, we are satisfied that the whole amount of principal and interest mentioned in the note is due from the estate of Susan Petty to the defendant.

Let the decree dismissing the bill be reversed, and let a decree be entered that the note in question constitutes a just debt against the estate of Susan Petty for the amount of $3,000 and interest from October 13th, 1882.

The defendant is entitled to costs against the estate, both in the court of chancery and in this court.

*Decree unanimously reversed.*