NANCY TUCKER, Respondent, *v.* CLARISSA TUCKER and others, Appellants.

JURISDICTION OF SURROGATE UPON FINAL ACCOUNTING. CONSTRUCTION OF STAT-UTES. ADMINISTRATORS, ETC. ARBITRATION. WHAT CONSTITUTES A DISPUTED CLAIM AGAINST AN ESTATE. STATUTE OF LIMITATIONS. NOTICE. PRACTICE. APPEAL.

The surrogate of a county has no jurisdiction to hear and determine the validity and amount of a disputed demand against an estate, upon a final accounting of an executor or administrator.

The provision of the Revised Statutes (3 R. S. 181, § 72, 5th ed.), giving to the final decree of a surrogate, upon the final settlement of an account, etc., the same force and effect as the decree or judgment of any other court of competent jurisdiction, applies only to a decree and judgment made according to law, and within the jurisdiction of the surrogate, and not to a decree or judgment where that officer has plainly exceeded his authority.

It would seem, from the facts in this case, and the determination of the court thereon, that, where a claim is presented to the administrator, and the same is not allowed, but its validity is questioned by him, and, upon the final accounting before the surrogate, the claim is presented before that officer, with evidence in its support, and its allowance is opposed by the administrator, it cannot be held to be a liquidated and undisputed demand against the estate, but becomes a disputed claim within the meaning of the statute in reference thereto.

A claim against an estate does not become a liquidated and undisputed claim, by virtue of the neglect of the administrator to refer the same as authorized by the statute (2 R. S. 88, § 36); nor can the administrator or executor of an estate be permitted to assume or to occupy the equivocal position of neither admitting nor rejecting a claim, so as to give the surrogate jurisdiction of it, under section seventy-one, of 2 Revised Stat-utes, page 96. In other words, it would seem, that a claim is rejected or disputed by not being allowed.

Where a claim, not allowed by the administrator, is presented to the surro-gate upon [the final accounting, before whom the administrator and all the parties in interest duly appear and consent to, and take part in, the proceedings submitting the matter to his adjudication, such proceedings cannot be upheld upon the [ground that it was an arbitration, binding upon the parties present and participating in it; for, being invalid as to the administrator, who has no power to arbitrate, it could not be obliga-tory upon the others; it is simply the proceeding of a court acting beyond its jurisdiction, assuming unauthorized powers, and making a judicial determination void and nugatory upon its face.

The limitation of actions upon disputed or rejected claims against the estate of a deceased party, prescribed by section thirty-eight (2 R. S. 89), is

applicable only to cases where the presentation and rejection of the claim occurs after the publication of the notice requiring creditors to present their claims against the estate. (*Whitmore* v. *Foose,* 1 Denio, 159.)

Where the application of a creditor, to have the real estate of an intestate sold for the payment of his debts, is opposed upon the ground, that certain proceeds of the personal estate have been improperly applied by the representatives to satisfy claims against the real property of such intestate, without objection from the creditor, or any appeal on his part from the decree allowing such improper payment, the fact of such improper application of the personal estate must be made clearly to appear from the proceedings; and the rejection of the creditor's application by the surrogate, upon the ground stated, or upon the ground that there is a sufficiency of the personal estate, if properly applied, to pay the debts, should also be made affirmatively to appear, in order to bring the point properly before this court on appeal.

*A. C. Calkins* and *Horace Boies,* for the appellants.

THIS is an appeal from a judgment of the Supreme Court in the 8th district, reversing a decree of the surrogate of Erie county which denied the application of the respondent to have the real estate of defendants' intestate sold for the payment of his debts.

It appears from claimant's petition that on the 27th of April, 1855, Jedediah Woodard and Clarissa Tucker were appointed administrator and administratrix of the estate of Samuel Tucker, deceased.

That February 6th, 1857, the respondent presented her claim duly verified to the administratrix, who, on being asked what she had to say to it, replied: " That she had nothing to say to it."

That in February, 1857, when she went to notify the respondent of the final accounting, she said: " They did not consider it a legal debt, and they had no right to pay it."

The administrator said at the final accounting, after all the proofs were closed, that there was fraud in this claim, and he opposed paying it.

On the 13th of February, 1857, a final accounting of the representatives was had before the surrogate, in which the respondent and heirs at law of the deceased appeared, and the respondent presented and gave proof tending to establish

the claim in question, after hearing which, the surrogate decided that such claim was not proved, and disallowed it.

Upon such accounting the administrator and administratrix claimed to be allowed $136, paid by them, from the avails of the personal assets, on a mortgage which was a lien on the real estate of deceased. The infant heirs, who are defendants in this case, objected to the allowance of such claim. But the respondent did not object nor appeal from the decree allowing such claim. On the 11th day of May, 1858, the petitioner and respondent presented and filed her petition in the surrogate's court, amongst other things praying proceedings to mortgage, lease or sell the real estate of the deceased to pay her claim.

In reply to the plaintiff's petition herein, the infant heirs of deceased appeared before the surrogate and by their special guardian filed written objections to the granting of the prayer of said petitioner, which presented for the decision of the surrogate the following points:

1. Had the surrogate jurisdiction to try a disputed claim on the final accounting?

2. Was the claim in question a disputed claim?

3. If a disputed claim, was it not barred by the six months statute of limitations?

4. Is not the claimant barred of all rights to enforce her claims against the *real estate* of deceased by the fact that the surrogate on the final accounting allowed the administrators a claim of $136 for money paid by them from the proceeds of the personal estate in satisfaction of a mortgage debt, while the claim in question remained unpaid, and from which decision the claimant, being a party to the accounting, failed to appeal.

Upon the hearing in this case, the evidence being substantially as above set forth, the surrogate denied the prayer of the respondent.

From this order the respondent appealed to the Supreme Court, where the order of the surrogate was reversed and the appellants appeal to this court.

In behalf of the appellants we submit the following:

I. The surrogate had jurisdiction to try and determine this claim upon the final accounting, conceding that the same was a disputed claim, and his decree thereon is conclusive until reversed.

Upon this question we can add nothing to the arguments for and against us in the conflicting cases upon this point, and will only refer the court to these cases, confident that the question will be settled in accordance with the spirit and intent of the statute and for the best interests of all concerned.

Tending to affirm such right are the cases of *Kidd* v. *Chapman* (2 Barb. Ch. 414); *Cornell* v. *Brewer* (1 Brad. Sur. 224); *Flagg* v. *Rulen* (id. 192); *Bank of Poughkeepsie* v. *Hasbrouck* (2 Seld. 216).

Disputing such authority are the cases of *Magee, Admr., etc.,* v. *Vedder* (6 Barb. 352); *Wilson, Exr., etc.,* v. *Baptist Educational Society* (10 id. 308).

II. But we insist that this was not a disputed claim at the time of the final accounting within the meaning of the statute.

Section 40 (3 R. S. 175, 5th ed.) provides, that the executor may require satisfactory vouchers in every claim presented, and also the affidavits of the claimants of its correctness.

Section 41 provides that if the executor doubts the correctness of any claim presented, he may enter into an agreement to refer the same, etc. And section 43 makes it incumbent upon the claimant, if his claim is disputed or rejected, to bring his action within six months or be forever barred.

In this case the claimant presented her claim duly verified. If the administratrix doubted it, the law imposed upon her a duty — *she must offer to refer*, or else she must dispute or reject it. If she does neither, the claim of necessity stands admitted. The law requires *no action* whatever on the part of the administrator to establish a claim duly presented, while, if he doubts it, he *must act* by offering to refer. If he disputes it or rejects it, he can only do it by some *action* on his part, clearly indicating that fact.

In *Magee* v. *Vedder*, above cited, Justice HARRIS treats this question very fully. He says: "If the executor or administrator, when the claim is thus presented, or at least within a

reasonable time thereafter, does not offer to refer the claim on the ground that he doubts its justice or disputes it as unjust, it is to be deemed, I apprehend, a liquidated and undisputed debt against the estate."

When this claim was presented to the administratrix, duly verified, she was asked what she had to say to it, and " she said she had not any thing to say to it." What more could she do to admit it? we repeat. The statute has not provided that to admit the claim she shall indorse that admission on the face of the affidavit, or that she shall open her mouth and say she admits it; while it has provided what she shall do if she doubts it, and we insist that she could not dispute or reject it by her mere silence, and having admitted it when presented, no action of hers, or of the administrators, could have put it in issue after it had become an " established claim" even had they been so disposed.

Again, we insist that the action of the representatives before the surrogate did not indicate an intention to dispute this claim. No objection to the claim, either oral or written, was made in that court. No issue of any kind whatever was formed for trial so far as the case shows.

Under these circumstances, we insist that the surrogate had full power and authority to decree payment of this claim. He may have erred in refusing to do so, but that error could only be corrected on appeal.

There is another question in the construction of these statutes to which we wish to call the attention of this court. It not unfrequently happens that claims are presented to representatives of deceased persons about which the representatives have no knowledge whatever. They are not in a condition to either admit or deny them, for to do so might subject them to loss if the claim was improperly admitted, and the estate to costs if improperly disputed. In such a case is it not entirely consistent with the provisions of the seventy-first section of the statute to which reference has been made that they should turn over such claims to the surrogate, who can administer oaths and examine witnesses, and thus, within the language of the statute, " settle and deter-

mine *all questions concerning any debt, claim,* legacy, bequest or distributive share, to whom the same shall be payable and the sum to be paid to each person?"

Such a construction, it seems to us, would not be inconsistent with either the letter or the spirit of this statute, and would relieve personal representatives, in many instances, from embarrassment, and save much cost and litigation.

If such a construction is given the statute, this case comes within it, and the jurisdiction of the surrogate must be affirmed, although it be held that this was not an admitted claim, and also, that the surrogate cannot try and determine *an issue* involving the validity of a claim of this character.

III. If it is held that this was a disputed claim, and that the surrogate had not jurisdiction to try the same, is it not barred by the statute of limitations? (3 R. S. 176, § 48.)

The learned judge who wrote the opinion in the Supreme Court in this case, says this question was not *raised* or passed upon by the surrogate. We think he must have overlooked the third objection of the special guardian of appellants, found on page fifteen of the printed case.

It has been held by the Supreme Court that this statute does not apply, except in cases where notice to creditors to present their claims has been published.

*Whitmore* v. *Foose* (1 Denio, 159) is the most direct case upon this point. While we might, perhaps, concede the correctness of the decision in that particlar case (the administrator having published notice *after* the claim in question had been presented), we are not satisfied with the general rule as there laid down.

The object of the statute requiring creditors to prosecute their claims within six months after they are disputed or rejected, is to expedite the settlement of estates of deceased persons. The object of the statute authorizing (for it does not require) the publication of notices to creditors to present their claims, is to bring to the notice of such creditors the death of the intestate, the appointment of his representatives, and the necessity of presenting their claims, that in the application of the assets they may be paid the whole or their pro-

portion thereof. But in a case like this, when each of these objects is attained in the personal knowledge of the claimant, and she actually presents her claim and it is disputed, ought it not to be held that every object of the statute, \allowing notice to be published (so far as the claimant is concerned), is accomplished by her personal knowledge, and every reason which requires her to prosecute her claim in six months when she derives her knowledge of the facts from the publication of a notice, is equally applicable when she has personal knowledge of such facts, and *acts* upon such knowledge by presenting her claim?

IV. Is not the claimant barred or. stopped from prosecuting this claim by the fact that a portion of the proceeds of the personal estate had been improperly applied by the representatives to the payment of a mortgage debt, and such payment was allowed them on the final accounting, without objection from her and without appeal from the decree?

It is provided by statute that, "whenever any real estate, subject to a mortgage, executed by any ancestor or testator, shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, without resorting to the executor or administrator of his ancestor, unless there be an express direction in the will of such testator that such mortgage be otherwise paid." (3 R. S., 5th ed., § 4, 38.)

It does not appear in this case whether the payment by the representatives was upon a mortgage executed by the intestate or upon one executed by other parties upon real estate of which he died seized.

If the latter, the personal estate could not legally be applied to the payment of the same. (4 Kent's Com. 431.)

Section thirteen (3 R. S. 188) provides that "it shall be competent to any heir or devisee of the real estate in question (on an application to sell the same for payment of debts), and to any person claiming under them, to show that the whole of the personal estate of the deceased has not been duly applied by the executors or administrators to the payment of his debts," etc.

A subsequent statute allows the application, in the discretion of the surrogate, to be made before the *whole* of the personal estate has been actually applied, if it appears that it is insufficient, but it does 'not change the rule allowing the heir to show that it was not " duly applied."

In this case, one of the answers of the heirs is, in substance, that the personal effects had not been " duly applied."

We can hardly conceive how it is possible to answer this objection of the appealing heirs in this case unless it be by claiming, that, from the accounts of the representatives as shown in the final order of the surrogate, it appears that the personal estate was insufficient for the payment of all of the debts, including the claim in question and commissions.

It appears, that, allowing the representatives $136, paid on the mortgage, and all their commissions and costs, the estate was indebted to them in the sum of $115, which sum subtracted from the $136 improperly paid on the mortgage, would have left $21 in their hands to apply on the plaintiff's claim after paying all others and their own commissions in full.   To this should be added $6.80, commissions on the $136 improperly paid, which would have left $27.80 to apply on plaintiff's claim after paying all others in full.

The claim in this case, it will be remembered, amounted to only $36.80, including some $15 of interest, when presented to the administratrix.

Section 59 (R. S. 196) provides *when* a creditor may apply for an order that the administrator sell real estate for the payment of debts, and section 61 (same page) provides that, " If   *   *   *   the surrogate be satisfied of the matters specified in the 14th section of this title, he may order such executor or administrator to mortgage, lease or sell so much of the real estate of which the testator or intestate died seized as shall be sufficient for the payment of the debts established before him."

When we turn to section fourteen of the statute to ascertain of what the surrogate must be satisfied before making the order aforesaid, we find in the third subdivision thereof that he must be satisfied " that the personal estate of the

deceased is insufficient for the payment of such debts, *and that the whole of such estate, which could have been applied to the payment of the debts of the deceased, has been duly applied to that purpose.*" (3 R. S., 5th ed. § 14, p. 189.)

Of that fact the surrogate could not be satisfied from the evidence in this case, for it was not true, and if the application had been made by the representatives, and the surrogate had been satisfied that the personal estate was insufficient for the payment of all of the debts, it would still have been discretionary with him whether he would or would not grant the application while a portion of the personal estate was in a position where it could be reached (at least by an appeal from the decree on the final accounting), and applied to the payment of such debts. And, in this case, for quite as conclusive reasons, we insist that it was competent for the surrogate, in the exercise of his discretion, at least, to refuse the application of the respondent so long as it appeared that she had not followed up the prosecution of her claims, and enforced it against the personal estate, especially when we consider that this estate is entirely settled with the exception of this small claim, and that even this would have been so nearly if not entirely liquidated by the application of moneys in the hands of the representatives, which the respondent could have compelled them to apply to that purpose.

*H. C. Day*, for the respondent.

I. The surrogate's court is a creature of the statute, and being a court of inferior and limited jurisdiction, those claiming under its decree, must show affirmatively, that the surrogate had authority to make the decree, and that the facts upon which he acted gave him jurisdiction. (*Corwin* v. *Merritt*, 3 Barb. 341, per MASON, J.; see cases there cited; *The People* v. *Barnes*, 12 Wend. 492; *The People* v. *Corlies*, 1 Sandf. S. C. 228; *Kundolf* v. *Thalheimer*, 17 Barb. 506; see also cases cited under point 2.)

(*a*) The surrogate did not acquire jurisdiction, by hearing proofs and rejecting the claim on final accounting.

STRONG, J., in delivering the opinion of the court in the

case of *Dudley* v. *Mayhew* (3 Comst. 9), says: "It has been long and correctly settled that *not even a direct assent* by the parties can confer jurisdiction, or render the judgment of a tribunal, in a matter over which it has not by law any cognizance, effectual." In the case then under discussion, a written stipulation had been given, for a valuable consideration, that the defendant would not raise the question of jurisdiction.

In the case of *Coffin, Exr.*, v. *Tracy* (3 Caines, 129), the executor went before a justice and confessed judgment. The court held, that "neither consent nor confession will give jurisdiction."

JOHNSON, J., in delivering the opinion of the court in the case of *Beach* v. *Nixon* (5 Seld. 35), says: "The remaining point is whether the covenant contained at the end of the lease, either confers jurisdiction to proceed under the statute in respect to summary proceedings, or precludes the lessee from objecting for want of jurisdiction. The law, and not the consent of parties, confers jurisdiction, and that rule could have no practical force, if consent given, in whatever form, could preclude inquiry as to the lawfulness of jurisdiction."

II. The surrogate had no jurisdiction to hear, try and determine a disputed demand, on the final accounting of an administrator or executor. (3 R. S., 5th ed., 180, 181, § 71.)

This section declares that the final settlement of the account and the allowance thereof by the surrogate, shall be conclusive evidence of certain facts therein enumerated, "*and of no other.*"

The case of *Wilson & Thompson, Exrs.*, v. *The Baptist Ed. Society* (10 Barb. 308) was decided at General Term. BROWN, J., delivered the opinion of the court. At pages 316 to 320, he reviews the provisions of the statute.

*Magee, Admr.*, v. *Vedder* (6 Barb. S. C. 352), is a General Term decision, in which HARRIS, J., delivered a very elaborate opinion. He says: "Upon a very careful examination of the provisions of the statutes, in relation to the powers and duties of surrogates, and of executors and administrators in respect to the creditors of an estate, I have become entirely

satisfied that the legislature did not intend to confer upon the surrogate any such jurisdiction. It is certain no such power is given in express terms; and upon comparing the various provisions of the statute with each other, I am equally certain, that no such power was intended." The learned judge quotes liberally from the opinion of DAVID B. OGDEN, surrogate of New York, in the *Matter of the Estate of John Kent, deceased*, which is reported in the appendix to the first edition of Dayton's Surrogate. The cases of *Kidd* v. *Chapman* (2 Barb. Ch. 414), and *Fitzpatrick* v. *Brady* (6 Hill, 581), which are often cited as laying down a different rule, are there reviewed and explained. (*In the matter of the accounting of Isaac Jones, Executor, etc.*, 5 Legal Observer, 124; *In the matter of the accounting of Robert Phyfe, Administrator*, id. 331.)

*Disosway, Admr., etc.*, v. *The Bank of Washington* (24 Barb. 60) is a General Term decision. The opinion was delivered by Justice WELLS, who had taken part in the decision of the case of *The Bank of Poughkeepsie* v. *Hasbrouck* (2 Seld. 216). The learned judge says: "The statute nowhere, in express terms, confers upon the surrogate the power to adjudicate upon the existence, validity or amount of a debt claimed against the estate of the testator or intestate, upon a final settlement, where the debt claimed is disputed by the executor or administrator, and a surrogate should not assume the exercise of such power by inference or implication. * * If it were otherwise, a surrogate might determine issues upon the genuineness of the signature to a note which was the evidence of a claim; of fraud and undue influence in the procurement of an obligation upon which the claim was founded; of the capacity of the testator or intestate at the time of the transaction upon which his estate is sought to be charged; of payment; of set-off; of recoupment, and, indeed, nearly all the questions which arise in actions upon contracts in courts of record. Before such extensive common law powers can be exercised by surrogates, the legislature should manifest their intention to that effect in more unequivocal language than they have yet used, or, as I apprehend, they will soon

use." (*Andrews, Admr.*, v. *Wallege, Admr.*, 17 How. S. T. 263; *Curtis* v. *Stillwell*, 32 Barb. 354; Willard on Executors, 295, 417.)

In Dayton's Surrogate (3d ed., 186, 552), the learned author says: "This point has been the subject of considerable discussion, and seemingly of conflicting decisions; but the Supreme Court, having in three several cases at General Term, in different parts of the State, determined that when the statute speaks of the rights of a creditor to call for an account, and gives the power to the surrogate to decree the payment of a debt or any part of it, it must be understood to apply to undisputed debts, and that a surrogate has no power to try or decide upon the validity and amount of a claim against an estate upon the petition of a creditor praying for a decree directing its payment, when such claim is disputed by the executor or administrator, and the right of the surrogate to make such a determination is denied, the question may now be regarded as settled, that the surrogate has not jurisdiction in the premises."

In note O, on the same page, the learned author says: "Considerable space is appropriated to the examination of the cases upon this question in the second edition of this publication. As the question is no longer an open one, that discussion is omitted in the present edition."

In conclusion, we submit, that the statutes regulating and defining the powers and duties of surrogates, nowhere give them jurisdiction to try and adjudicate disputed claims of creditors on final settlements; that such is now the well settled rule and practice of surrogates' courts; that to clothe surrogates with a jurisdiction, such as is claimed for them by the appellants' counsel, would be investing them with a power possessed by no other class of judges in the State — to be exercised in a court without pleadings — and would rob the creditor of his constitutional right of a jury trial.

MILLER, J. The claim of the appellants, at the time of the final account, was disputed within the meaning of the statute. When it was presented to the administrator, it was

not admitted, and it appears that at one time the administratrix said she had no right to pay it, and at another, the administrator said there was fraud in the claim, and he was opposed to paying it. Upon the accounting, the demand was presented and its allowance opposed. Evidence was given in support of it, and it was disallowed by the surrogate. If it was not a disputed claim, where was the occasion for a contest? Why was it rejected, and why not allowed with other claims against the estate?

It is said, that if the administratrix doubted the claim, she should have offered to refer it, and by not doing so, it became a liquidated and an undisputed demand against the estate. The answer to this proposition is, that neither party chose to consider it in that light, and on the hearing before the surrogate, it was contested and rejected. Had it not been, there was no necessity for the introduction of evidence, and it would have been allowed as a matter of course. Nor can the claim be regarded as one about which the representatives had no knowledge whatever, and which they were not in a condition either to admit or deny, and therefore was cognizable by the surrogate under the provisions of the statute. (2 R. S. 96, § 71.) I think that the statute does not cover any such case, and that representatives in the discharge of their duties are not at leave to occupy the equivocal position of neither allowing nor rejecting an account presented. The statute makes provision, that if the representative doubts the correctness of the claim, he may enter into an agreement to refer it (2 R. S. 88, § 36); but it nowhere authorizes him to hold the question of allowance or rejection in abeyance until a final accounting is had, when the claim can be contested or allowed at his volition.

The claim being clearly a disputed one, the question arises, whether the surrogate of a county has jurisdiction to hear, try and determine the amount and validity of a disputed demand upon a final accounting of an executor or administrator.

The power of the surrogate to act and to adjudicate in such a case depends upon the construction to be placed upon section 71 of 2 Revised Statutes, 96, before cited, which relates to the

duties of executors and administrators in rendering an account and in making a distribution to the next of kin, and which provides that, whenever an account shall be rendered and finally settled, except under certain sections which are stated, and if any part of the estate remains to be paid or distributed, the surrogate may make a decree for the payment and distribution thereof among the creditors, etc:, according to their respective rights; "and in such decree shall *settle and determine* all questions concerning any debt, claim, legacy, bequest or distributive share; to whom the same shall be payable; and the sum to be paid to each person." This provision of the statute has been the subject of judicial interpretation, and it has been held in several cases in the Supreme Court of this State, that the surrogate has no power to adjudicate in reference to a disputed claim. (*Magee* v. *Vedder*, 6 Barb. 352; *Wilson* v. *The Baptist Ed. Society of N. Y.*, 10 Barb. 308; *Disosway* v. *The Bank of Washington*, 24 id. 60; *Curtis* v. *Stillwell*, 32 id. 354; *Andrews* v. *Wallege*, 17 How. 263.) Among the cases cited are the decisions of four General Terms of this State, and in the opinions delivered, the statutes bearing upon the jurisdiction of the surrogate in such cases, and the authorities relating to the question are fully considered, so that no field of inquiry remains to be explored. The full examination of the question made in *Magee* v. *Vedder* (*supra*) forecloses further discussion at this time, and I am unable to discover any answer to the positions there assumed. In *The Bank of Poughkeepsie* v. *Hasbrouck* (2 Seld. 216), to which we have been referred by the appellant's counsel, the question now made did not arise, and the point was not involved or adjudged. The intimation made at the close of the opinion of JOHNSON, J., is not sufficiently justified to overrule the elaborate discussion of the subject in the cases cited. Concurring mainly in the views expressed in these cases, there is little room for further remarks. It may, however, be observed that the interpretation placed upon the statute would seem to be consistent with the character and purposes of a probate court, where the jurisdiction is confined to the

control and distribution of estates of deceased parties.   For
if the door was once open to litigate every demand which
might be presented upon a final accounting, it would neces-
sarily impose upon surrogates' courts a class and amount
of business, and of labor and responsibility far transcending
the objects for which they were instituted.   This clearly
could never have been designed, and it is very manifestly
compatible and consistent with the organization of such
courts and the statute relating to them, to leave to other
tribunals duly constituted for that purpose, the determina-
tion of disputed claims, which frequently involve the most
intricate questions of law and fact, which must necessarily
require much time in their investigation, and· create exten-
sive litigation.   The jurisdiction of the surrogate is local,
limited in its nature, and was never intended to embrace
cases of such a character, but to be confined to the discharge
of certain prescribed duties, which do not embrace the hear-
ing and disposition of claims which are contested.

If these views are correct and these decisions cited are to
be considered as decisive, then the question arises, whether
the submission of the claim by the respondent and its rejec-
tion was binding and final as an arbitration, so as to preclude
its enforcement afterward.   It is claimed that such is the
case.   As the surrogate had no original jurisdiction and ex-
ceeded his powers, I think that the proceedings must be
regarded as *coram non judice* and void, unless they can be
upheld upon the ground that it was an arbitration binding
upon the parties who were all represented on the occasion,
consented to the proceedings, took part in the same, and
submitted the matter to the surrogate.   It is conceded that
administrators have no power to arbitrate ; and I do not
think that this rule can be waived or obviated because the
creditor, next of kin and administrator were present and
participated in the proceeding.   For if it was binding on the
creditor and next of kin as an arbitration, it was not on the
administrator, and being invalid as to one of the parties,
would not be obligatory upon the others.   The proceeding
was not in any sense an arbitration, but it was the proceed-

ing of a court acting beyond its jurisdiction, assuming unauthorized powers and making a judicial determination void and nugatory upon its face. There is no rule of law which sanctions such an administration, and a judgment under such circumstances is open to assault for want of lawful authority and jurisdiction.

It is said that the provision of the statute (3 R. S., 5th ed., 181, § 72), to the effect that the final decree of a surrogate upon the final settlement of an account, etc., shall have the same force and effect as the decree or judgment of any other court of competent jurisdiction, etc., applies to the decree of the surrogate in proceedings had on the final accounting, and is a bar to the application made by the respondent. The statute cited relates, I think, to a decree and judgment made according to law and within the jurisdiction of the surrogate, and not to a decree or judgment where that officer has plainly exceeded his authority, as was the case here. In the latter case, the decree, having been made without authority, is not a bar, and can have no effect in preventing further action.

It is also insisted by the counsel for the appellants that if the claim was disputed and the surrogate had no jurisdiction to try the question as to its validity, that then it is barred by the statute of limitations. The statute in question (2 R. S. 89, § 38) enacts, that if a claim against an estate of a deceased party shall have been disputed or rejected, and shall not have been referred, the claimant, within six months thereafter, or within six months after the debt or any part thereof shall become due, shall "commence a suit for the recovery thereof, or be forever barred from maintaining any action thereon," etc. In *Whitmore* v. *Foose* (1 Den. 159), it was held that the limitations of actions provided by this statute, is only applicable to cases where the presentment and rejection of the claim is after the publication of notice requiring creditors to present their claims against the estate, as authorized by § 34 of the same title. The decision in this case is, I think, a correct exposition of the statute, and I am unable to see how any distinction can be made between the case cited and the one under consideration.

It is also insisted that the respondent was barred or estopped from prosecuting his claim, by the fact that a portion of the proceeds of the personal estate had been improperly applied by the representatives, to the payment of a mortgage debt, and such payment was allowed them on the final accounting without objection from her, and without any appeal from the decree.

The fact that the estate was improperly applied does not sufficiently appear by the proceedings, and it is not shown that the mortgage paid was not executed by the intestate, and that he was not personally bound to pay the amount secured thereby. In the latter case there could be no objection to the application made; it could not be said that the whole of the personal estate had not been duly applied. (2 R. S. 101, § 10.)

The application to sell the real estate may be made, whenever it is discovered that the personal estate is insufficient to pay the debts. (Laws of 1837, chap. 460, § 40; 3 R. S., 5th ed., 187.) And in this case it is conceded, that even if the sum alleged was improperly paid, there was still insufficient to pay the whole of the respondent's demand. This last fact would entitle the respondent to pay from some source, and if the personal estate was not enough then why should not the real estate be appropriated for that purpose? It is said that the surrogate must be satisfied that the personal estate of the deceased is insufficient, and that the whole estate which should have been applied to the payment of the debts of the deceased, has been duly applied for that purpose. (1 R. S. 102, § 14, sub. 13.) The answer is, that the application was not rejected upon any such ground, and it nowhere appears that he was not satisfied. If the decree had thus stated, the point might be properly before us, but as it stands does not arise.

The order of the General Term must be affirmed, and the proceedings remitted to the surrogate's court of Erie county with directions to proceed thereon. The respondent also should have costs upon the appeal to be paid out of the estate.

Order of General Term affirmed.