Andrews, J.
The plaintiff, as devisee and • owner of the. land sold on the execution upon the judgment recovered, in September, 1857, by Gilbert against Sylvanus B. Stilwell (the plaintiff’s testator), could maintain an action to set aside the sheriff’s sale, and the deed made in pursuance thereof, if the judgment in fact was paid when the sale was made. If it was paid when the execution was issued, the process was void from the beginning, and if it was paid after it was issued, the power of sale became ipso faoto extinguished, and no title could be acquired under it, even by a bona fide purchaser. *420 (Wood v. Colvin, 2 Hill, 566; Delaplaine v. Hitchcock, 6 id., 14; Carpenter v. Stilwell, 1 Ker., 61.) The plaintiff would have an action in that case in her right as owner of the fee, for the cancellation of the deed as a cloud upon her title. But it is not perceived how such an action could be maintained by her, in. her character as executrix. She took no interest as executrix in the lands of her husband, and no facts are disclosed upon which her right as executrix to question the validity of the sale can be supported.
The same difficulty does not exist in respect to the other branch of the case, as to which relief was granted by the Special Term, viz., the claim to set aside and to • have declared void the decree of the- surrogate, - made on the accounting of the executrix in 1866, for the payment of $5,700 or thereabouts, the balance adjudged to be due from the estate on the judgment of Gilbert against Stilwell, on the ground that the decree was procured by - the fraud of the parties who made the claim and prosecuted the proceedings. The plaintiff, in her capacity as executrix, was entitled to bring an action to b.e relieved from the decree if obtained by fraud. The executor represents the personal estate of the testator, and it is his duty to defend it against unjust or unfounded claims, and if the judgment in this case, declaring that- the decree of the surrogate was procured by fraud, is supported by facts which, within the adjudications, authorize the conclusion reached by the learned judge at Special Term, then the judgment as to this branch of the case at least must .be affirmed.
The surrogate, in 1859, at the instance of one Curtis, who claimed to be the assignee of the judgment, made an order that the plaintiff render an account of her proceedings as executrix, and show cause why she should not be decreed to pay the judgment. The executrix, in January, 1860, rendered her account, and she denied the assignment to Curtis? and alleged that Gilbert was the owner of the judgment, and that it was rendered .upon demurrer, and without a trial upon the mérits," and that the claim upon which it was ren *421 dered was unfounded, and also that an appeal from the judgment was pending in the Court of Appeals, and that she was advised that if the judgment was affirmed, leave to answer would be given. The surrogate thereupon suspended the proceedings on the accounting, to await the determination on the appeal from the judgment, and afterward, in January, 1861, the judgment having been affirmed, and leave to answer having been denied, the accounting was resumed, and in April, 1861, the surrogate denied the application for the payment of the judgment on the ground that no assets had come to the hands of the executrix applicable thereto. This decree was reversed by the Court of Appeals-in July, 1863, and the proceedings were remitted to the surrogate with directions to proceed with the accounting, and an order was made that she render her account. The plaintiff filed her account, stating, among other things, the claim made by Curtis upon the Gilbert judgment, and alleged that one Shultz claimed an interest in it, and also that $6,000 had been collected on the judgment by sale on execution of the real estate of the testator, and she further alleged that, in February, 1863, the judgment was assigned to one Markham. From this time the proceeding on the creditor’s petition and on the final accounting were continued as one. Markham then intervened and became a party to the accounting, and on his examination in November, 1864, it appeared that the judgment was assigned to him by Curtis in 1862, at the request of the defendant Jacob Carpenter, in payment of a debt owing by Carpenter to him. On the 30th of December, 1864, the executrix filed an answer to the claim of Markham in the proceedings, in which she alleged that the defendant Jacob Carpenter was the owner of the Gilbert judgment before and at the time of the assignment to Markham, and that while Carpenter was such owner the estate held judgments against him exceeding the amount of the Gilbert judgment, which, she alleged, were a legal offset against it. The counsel for the executrix then offered in evidence several judgments against Jacob Carpenter, which had been assigned to *422 the testator, and objection was made by the claimant’s counsel to their reception, on several grounds stated, the first of which was that the Gilbert judgment never belonged to Carpenter, and that Markham was the owner. The surrogate ruled that he must be governed by the legal title to the judgment against Stillwell, and refused to inquire into the equities of Carpenter in it or to offset the judgments against Carpenter, against such equities, if there were any. The final decree upon the accounting was made in September, 1866. The decree allowed the Gilbert judgment, after applying thereon $6,000, the amount bid on the execution sale of. the real estate of the testator, as a claim against the estate, and adjudged that' the balance ($5,563.07), together with costs, should be - paid by the executrix to Markham as assignee of the judgment. The executrix appealed from the decree, alleging, among other grounds of error, the allowance of the claim on the Gilbert judgment, and in March, 1871, the decree was, in that respect, affirmed by this court, and the proceedings having been remitted to the surrogate, a decree in conformity to the judgment of this court was made by him in October, 1873.
The fact upon which the Special Term based the finding, that the decree of the surrogate was obtained by fraud, was this, viz.: That the judgment of Gilbert against Stilwell, was assigned by Markham to Jacob Carpenter, December 8th, 1864, and that Carpenter held the assignment and the legal title to the judgment when the judgments against him were offered in evidence as a set-off, and when counsel interposed as an objection to the proposed set-off that Carpenter had never owned the Gilbert judgment, and that the fact of the assignment was concealed from the plaintiff. Such-objection and concealment the court finds were intended to, and did deprive the plaintiff of the benefit of her defence and offset against the defendant Carpenter, and was a fraud upon the plaintiff, and that the decree obtained by such means was fraudulent and void.
We are of opinion that the fact found did not authorize *423 the court to set aside the decree of the surrogate. The general rule, that the decision and judgment of a court, as to any matter within its jurisdiction, is conclusive upon the parties, and those in privity with them, is fundamental. It secures respect for judicial decisions, and terminates litigation. It gives stability to rights of person and property once established in courts of justice, and a wise public policy demands that in cases falling within the reason of the rule, it shall be adhered to. But it is an ancient and established jurisdiction of courts of equity to restrain proceedings upon judgments at law, obtained by fraud and contrary to justice, and the authority exercised by the court in this case, in setting aside the surrogate’s decree, is to be tested by the principles which control courts of equity in exercising this essential but carefully guarded jurisdiction. In the case of The Marine Ins. Co. v. Hodgson (7 Cranch, 332), Marshall, Ch. J., says, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to the Court of Chancery. The limitations under which courts of equity act in interfering with judgments at law, stated by Chief Justice Marshall, are recognized in numerous cases. (Foster v. Wood, 6 J. Ch., 87; Simpson v. Lord Howden, 3 Myl. & Cr., 97; Powers v. Battle, 3 Green’s Ch., 465; Dobson v. Pearce, 12 N. Y., 157 ; 2 Lead. Cas in Eq., 89, and cases cited.) It is not sufficient to authorize the interference of the court that it is shown that the claim upon which the judgment was obtained was unfounded, or that there was a good defence to the action, or that the court erroneously decided the law, or that the defendant omitted to avail himself of his defence, if before the judgment was rendered the facts were known, or might by the exercise of reasonable diligence have been ascertained by him. It ‘is the duty of a defendant to make his defence, if he has any, when he is sued, *424 and if he omits to do it, he is in general concluded by the judgment. In this case the fact upon which the Special Term based its judgment, setting aside the decree of the surrogate, if unknown to the plaintiff when the accounting was had, was within the knowledge both of Markham the assignor, and of Carpenter, the assignee of the judgment. The plaintiff alleged, before the surrogate, that Carpenter was the owner of the judgment, but she did not call, as a witness, either of the persons by whom the fact could have been proved, although they were competent witnesses and within the jurisdiction of the court. Under the circumstances, the plaintiff was not entitled to the relief granted! Uor did the circumstance that counsel objected to the proposed set-off, on the .ground that Carpenter was not the owner of the Gilbert judgment, constitute a fraud justifying the court in annulling the decree. It, would be a dangerous precedent to disturb the solemn judgments of the court, by reason of the casual statement of counsel, in the course of the trial, which turned out to be untrue.
But there is another answer, we think, to the claim to set aside the decree, for, the fraudulent concealment of the fact that' Carpenter was the owner of the Gilbert judgment, and that is that, assuming that he owned it, the surrogate had no jurisdiction to set off against it the judgments against Carpenter. The set off of mutual judgments may be enforced either by action instituted for that purpose, or by motion to the court in which the judgment against the moving party was rendered. (Simpson v. Hart, 1 J. Ch., 91; Gridley v. Garrison, 4 Paige, 647; Cooke v. Smith, 7 Hill, 186.)
The statute, defining the jurisdiction of Surrogates’ Courts, declares that the surrogate, in his decree upon a final accounting, shall have power to settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share. (2 R. S., 95, § 71.) But it seems that he cannot pass upon or determine”a disputed claim against the estate. (Tucker v. Tucker, 4 Keyes, 136.)
The decree of a surrogate, allowing a judgment against a *425 testator, as a debt against the estate, would not prevent an application to the court, by action or motion, to enforce the set off of a judgment held by the testator, against the judgment embraced in the decree, and this is the specific relief which the plaintiff, in his complaint in this action, demanded, and which might properly have been granted. The surrogate exercises a peculiar and limited jurisdiction. The general powers of a court of equity do not pertain to a Surrogate’s Court, and the power to enforce the set off of mutual judgments, which is exercised upon equitable principles, and where the right often depends upon complicated facts and equities, is neither a convenient or necessary one to be lodged with a surrogate. It is not expressly granted, nor does he take it, I think, as incident to the specific authority conferred upon him.
I have not referred to the fact found by the court, that the judgment of Gilbert against Stilwell, was paid by the testator in his lifetime to Jacob Carpenter, while it was held1by Gilbert as security for a debt owing by Carpenter to him, which debt Carpenter paid' in October, 1868. If the judgment was paid, it was a fact which might have been shown before the surrogate on the accounting. But it was not claimed before the surrogate by the plaintiff that the judgment was paid, except in respect to the amount realized on the execution, and she had notice of the facts upon which the Special Term based the finding that the judgment had been satisfied. The court did not find that there was a fraudulent concealment of the fact of payment, and the ground on which the court set aside the decree assumes that the judgment against Stilwell was unpaid. ,
For the error of the court in setting aside the decree of the surrogate, the judgment must be reversed, and this renders it unnecessary to consider whether there is any error in that part of the judgment which declares the .sale of'the real estate of the testator on the execution and the sheriff’s deed in pursuance thereof to be void. If the judgment was in fact paid when the sale was made, the conclusion of the *426 Special Term was right. We cannot look into the records not produced below, for the purpose of reviewing the findings of fact, but if there are any additional facts tending to show that the settlement between the testator and the defendant Carpenter, on the 20th of January, 1858, did not embrace the judgment in question, there will, on a new trial, be an opportunity to present them.
The judgment should be reversed, and a new trial granted, with costs to abide the event.
All concur, on the ground that the surrogate had no jurisdiction to entertain the question of set-off, except Grover, J.,, not voting.
Judgment reversed.