QUEENS COUNTY.—HON. A. N. WELLER, SURROGATE.—
March, 1888.

MATTER OF COOLEY.

*In the matter of the estate of* RANDOLPH M. COOLEY,
*deceased.*

Money awarded by the Alabama Court of Claims, under the act of Congress, passed in 1882, on account of an "indirect claim," founded upon the payment of war-premiums for insurance, is to be deemed a gratuity to the claimant, and is protected from the demands of his creditors.

Where such money is, in fact, received by the administrator of the estate of an intestate claimant, it does not constitute assets of the estate, and is not applicable to the payment of the decedent's debts.

A Surrogate's court cannot, however, in such a case, direct payment thereof by the administrator to the relatives entitled. Their remedy is a civil action against him, for moneys had and received.

Voluntary appearance, in such a court, of all the parties to a controversy
does not confer power to determine the same, where the subject-
matter is without its jurisdiction.
Taft v. Marsily, 47 *Hun*, 175—followed.

THIS was a hearing had in a special proceeding in-
stituted to procure a judicial settlement of the ac-
count of Jonathan G. Kittle, as administrator of the
estate of the intestate decedent.    The facts are stated
in the opinion.

DE WITT, LOCKMAN & DE WITT, *for administrator.*

T. M. WYATT, *for next of kin.*

THE SURROGATE.—Two very grave questions are
presented by this accounting, viz. :

*First.* Whether or not the funds received by the
accounting administrator are assets of the decedent's
estate, and as such liable to be applied towards the
payment of his debts, and

*Second.* Are the debts of decedent barred by the
statute of limitations so as to prevent the holders
from participation in the distribution of the money ?

The decedent died in 1867, and letters of adminis-
tration were issued to the widow and Jonathan G.
Kittle, a creditor of the decedent.    On January 12th,
1869, all the assets of the estate having been convert-
ed into money, a final accounting was had before the
Surrogate, showing $6,670 on hand, and on January
26th, 1869, a decree was duly made and entered by
the Surrogate, directing the money to be distributed
to the creditors, *pro rata.*    Thirty-five different claims
were established before the Surrogate (including one

in favor of the administrator for $43,000) amounting in the aggregate to $49,000, and the dividend declared thereupon was eleven and one sixth per cent. on a dollar. This exhausted all the assets of the estate then in existence. But it appears that the decedent in his lifetime, along with many others, had filed with the United States government claims against England for a large amount, for increased or war premiums, which as a merchant he had had to pay out, to insure his freight and cargoes against risk of capture and destruction by the Alabama and other confederate cruisers.

These claims were denominated "indirect claims," and were, along with other claims known as the "direct claims," presented under a treaty between the United States and England, to the Court of Arbitration, provided for in the treaty, and that tribunal sustained the "direct claims," but threw out the "indirect claims," holding that they were not legitimate demands nor valid claims against England.

All the claims were presented by the United States as trustee for the different parties, and the United States government was in form the plaintiff, while England was defendant, and the court, while deciding against the "indirect claims," awarded to the United States government a gross sum in payment of the "direct claims." After receiving the award, the government created a Court called the Alabama Court of Claims and empowered it to distribute the money so recovered to the various holders of the "direct claims." This was done, and, after paying them all in full, a large unexpended balance was left over in the hands

of the United States government, where it remained for some time.   Finally, in 1882, Congress passed a law reorganizing the Alabama Court of Claims, and authorizing it to distribute the balance of the award unexpended to the various persons, who had been compelled to pay the large increased war premiums, for insurance.   And by the award of that court, the sum of $6,409.87 has come into the hands of the administrator, Kittle, which he holds for distribution.

The question now is, was this money assets of decedent's estate ?

The claim of Cooley, when filed with the United States government, was undoubtedly an asset, unliquidated, dubious and uncertain, but still an asset.   It was not a claim against the United States government, but a claim against England, and when Cooley filed it with the United States government, the government became his agent and trustee to prosecute and collect the demand.   The United States as trustee presented the claim to the tribunal, provided for its settlement and adjustment, and it was thrown out and adjudged to be no claim, and from that time it ceased to be a claim, or an asset of any kind.   Now did the Act of Congress of 1882, reorganizing the Alabama Court, and empowering it to award the unexpended balance to the various persons who had incurred the increased expense of war premiums for insurance, revive it as a claim and an asset of decedent's estate ?

The money was not held by the United States government, to be applied to the payment of such claims, on the contrary they had been adjudged by the only tribunal having jurisdiction of the subject, to be no

claim. It is of no consequence to whom this unexpended balance did belong, so long as it did not morally, legally or equitably belong to these "indirect claimants." The United States government took the responsibility of giving it to them, but because the money came through the Geneva Award, it did not make it any more applicable to the reimbursement of these persons who had been compelled to pay increased war premiums than the surplus or any other sum in the treasury. It is precisely the same as though the United States government had donated a sum of money to persons who had suffered by reason of the war, when no legal, equitable, or moral right existed in favor of the recipients.

It was simply a bounty, a *donum gratuitum* to those who perhaps had suffered during the war, but who had no claim, either legal, or equitable upon any body for indemnification. Now, should the bounty generously given by the government to these sufferers, be considered assets, and (before it ever reaches the object of the bounty or his family) liable to be appropriated in the payment of his debts ?

This question is novel, but it is not without authority bearing upon the subject. The Superior Court of Baltimore city has in a recent case (Ahrens v. Brooks) held these "indirect claims" not to be assets, and that the money received on account of them did not belong to an Assignee in Bankruptcy. And the General Term in New York city, in another recent case, held that the money received on account of these "indirect claims" belonged to the bankrupt and not to his assignee in Bankruptcy; that it was not an asset, but a

bounty or gift to the bankrupt, and he alone was entitled to it.   See Taft v. Marsily (47 *Hun*, 175).

The case of Gillan v. Gillan (55 *Pa.*, 430) seems to be on all fours with this case.   There the decedent owned a house in Chambersburgh, Pennsylvania, upon which several claims or liens had been filed by different creditors, and an armed Confederate force came into the town, destroying the building along with a large number of others, belonging to different people. Subsequently the State made a donation or appropriation to indemnify the sufferers by that raid, and the proportionate share of the decedent having come into the hands of the administrator, the question was to whom did the money belong.   An agreed case was made up, in which all the parties appeared and argued the question fully before the Supreme Court of Pennsylvania, in banc, and that tribunal held the money did not belong to the administrators or creditors, but belonged to the widow and children.   The learned judge who gave the opinion, after declaring it to be a pure gratuity, said :  " It would be a novel mode of rewarding personal merit or administering personal relief in such cases, to appropriate the bounty to the creditors of the party to be compensated or indemnified." I can see no difference in principle between that case and the case now before the court, and therefore hold that the funds in the hands of the administrator, Kittle, are not applicable to the payment of decedent's debts, but belong to the widow and children of decedent.

The fact that it was a bounty or donation determines the direction the fund must take.

But, although I may be of the opinion that the funds belong to the decedent's wife and children, it does not follow that I can make a decree ordering the same to be paid over to them. If I am correct in holding the funds not to be assets of decedent's estate, then it follows that the administrator has received money belonging to the widow and children of decedent and is liable to them in an action for money had and received, a purely common law action of which a Surrogate's court has no jurisdiction. A decree directing the administrator to pay over money which he had in some way received, and which belonged to another, would be absolutely void, for in effect it would be determining private controversies between persons in their individual capacity. See Bevan v. Cooper (72 *N. Y.*, 317); Tucker v. Tucker (4 *Keyes*, 136); Curtis v. Stilwell (32 *Barb.*, 364).

A Surrogate's court is one of limited jurisdiction, having only what is given by the express terms of the statute, and some powers incidental thereto (Sipperly v. Baucus, 24 *N. Y.*, 46). In Stilwell v. Carpenter (59 *N. Y.*, 414), the Court of Appeals declared the general powers of a court of equity do not pertain to a Surrogate's court, and decided that that court could not set off mutual judgments.

That all parties are voluntarily before the court on a final accounting of an administrator, will not confer jurisdiction. If the court has no jurisdiction, even an agreement of the parties would not confer the power upon it. See Tucker v. Tucker (4 *Abb. Ct. App. Dec.*, 428). The widow and children must be left to such remedies against the administrator as the law affords them.

This disposition of the case makes it unnecessary to discuss the question of the application of the statute of limitations.