George W. Riggs et al., as Executors, etc., Appellants, *v.* Samuel W. Cragg, as Administrator, etc., Respondent.

George W. Riggs et al., as Trustees, etc., Appellants, *v.* Same Respondent.

A Surrogate's Court can only exercise the powers prescribed by statute, and such incidental powers as are requisite to the exercise of the powers expressly given, or to the attainment of justice in the cases to which its jurisdiction extends. Unless a warrant for the exercise of jurisdiction in

a particular case can be found in the statute, either given expressly or by implication, the whole proceedings are void.

In proceedings under the statute (2 R. S. 220, § 1), for a special accounting of an executor, at the instance of a legatee, to enforce the payment of a legacy, the surrogate has only jurisdiction to decree payment where the legacy is undisputed. When upon such an application the surrogate can see that other persons may claim, and a real question is presented as to the right of one of several persons to the legacy or fund, he may not proceed to a determination without the presence of all the parties who may be affected by the adjudication ; these can only be brought in upon a final accounting, and only in that proceeding has the surrogate jurisdiction to settle and adjust conflicting rights and interests.

*It seems* that a surrogate has jurisdiction to pass upon the construction of a will, where the right to a legacy depends upon a question of construction which must be determined before a decree of distribution can be made.

*Bevan* v. *Cooper* (72 N. Y. 317), distinguished.

*Riggs* v. *Cragg* (26 Hun, 90), reversed.

(Argued April 17, 1882 ; decided October 10, 1882.)

THESE are appeals from two judgments of the General Term of the Supreme Court, in the first judicial department, entered upon orders which affirmed decrees of the surrogate of the county of New York ; one made upon settlement of the accounts of the executors of the will of Elisha Riggs, deceased ; the other settling the accounts of the same persons as trustees under said will. (Reported below, 26 Hun, 90.)

The material facts are stated in the opinion.

*Austen G. Fox* for appellants. The Surrogate's Court is an inferior court of limited jurisdiction, having only such jurisdiction as has been conferred upon it by statute. (*Bevan* v. *Cooper*, 72 N. Y. 317 ; *Stilwell* v. *Carpenter*, 59 id. 414 ; *McNulty* v. *Hurd*, 72 id. 518 ; *Roderigas* v. *East River Svgs. Instn.*, 76 id. 316 ; *Tucker* v. *Tucker*, 4 Keyes, 136 ; *Corwin* v. *Merritt*, 3 Barb. 341.) The jurisdiction to construe wills is part of the jurisdiction of the Court of Chancery, and is incident to its jurisdiction over trusts. (*Chipman* v. *Montgomery*, 63 N. Y. 221 ; *Bailey* v. *Briggs*, 56 id. 407 ; *Monarque* v. *Monarque*, 80 id. 320 ; 1 Wms. on Exrs. [6th Am. ed.] 339 [294] ; *Gawler* v. *Standerwick*, 2 Cox's Eq. Cas. 15, 29 ; *Walsh* v. *Gladstone*, 13 Sim. 261, 264 ; *Hegarty's*

*Appeal,* 75 Penn. St. 503, 516; 2 Story's Eq. Jur., § 1058.) No such jurisdiction has been conferred in terms upon the surrogate, and he cannot take it by implication for the jurisdiction of an inferior court is not to be extended by implication. (*Pierce* v. *Hopper,* 1 Stra. 249, 260; *Peacock* v. *Bell,* 1 Wms. Saund. 731; *James* v. *S. Wn. Ry. Co.,* L. R., 7 Exch. 287; *Simpson* v. *Blues,* L. R., 7 C. P. 290; *Smith* v. *Brown,* L. R., 6 Q. B. 729; *Jones* v. *Reed,* 1 Johns. Cas. 20; *Wells* v. *Newkirk,* id. 228; *People, ex rel. Gaskill,* v. *Ransom,* 56 Barb. 514; Potter's Dwarris Stat. Constr., 185; *Marston* v. *Paulding,* 10 Paige's Ch. 154; *Cooper* v. *Felter,* 6 Lans. 485; *Tucker* v. *Tucker,* 4 Keyes, 136; *Keteltas* v. *Green,* 9 Hun, 599; *Stilwell* v. *Carpenter,* 59 N. Y. 414; *McNulty* v. *Heard,* 72 id. 518; 2 R. S. 220, § 1, subd. 3; id. 98, §§ 32, 83; *Hayes* v. *Hayes,* 48 N. H. 219, 229; *Harrison* v. *Harrison,* 9 Ala. 470, 478; *Drane* v. *Beal,* 21 Ga. 21, 45; *Schull* v. *Murray,* 32 Md. 9, 16; *State* v. *Warren,* 28 id. 338, 355; 5 Statutes at Large [Edmonds' ed.], 671; Maxwell on Interpretation of Statutes, 321; 2 Story's Eq. Jur., § 1065; 2 R. S. 94, § 79.) If the surrogate had no jurisdiction to construe the will in this proceeding, then the question of the true construction of the will is not before the court on this appeal. (*Hurlburt* v. *Durant,* 88 N. Y. 121; *Willard's Appeal,* 65 Penn. St. 268; *Duryea* v. *Traphagen,* 84 N. Y. 652; *People* v. *Sturtevant,* 9 id. 263.)

*Wm. G. Choate* for respondent. The surrogate had jurisdiction, upon the accounting, to determine the right to the income of Mary Alice's share, which accrued and was unexpended during her minority, and to determine the question relating to stock dividends, and all other questions upon which he gave judgment by his decree. (2 R. S. 220, § 1 [6th ed.], vol. 3, p. 325; Laws of 1867, chap. 782; 3 R. S. [6th ed.] 106, § 100; 2 Laws of N. Y. [Jones & Varick's ed.] 71; 1 Webster's Laws, 317, 325; *Foster* v. *Wilber,* 1 Paige's Ch. 537; *Brick's Estate,* 15 Abb. Pr. 12; 3 R. S. [6th ed.] 104, § 86 [71]; *Mayee* v. *Vedder,* 6 Barb. 352; *Wilson* v. *Baptist Ed. Soc. of*

*N. Y.*, 10 id. 308, 318.)  Whenever a power is given by a statute, every thing necessary to the making of it effectual, or requisite to attain the end, is implied; and where the law requires a thing to be done, it authorizes the performance of whatever may be necessary for executing its commands.  (1 Kent's Com. [12th ed.] 464; Sedgwick on Stat. and Const. Law, 92; *Livingston* v. *Harris*, 11 Wend. 329, 340; *Stief* v. *Hart*, 1 Comst. 20, 30; Redfield's Surrogates' Courts [2d ed.], 240, 241; *Sipperly* v. *Baucus*, 24 N. Y. 46, 49; *Seaman* v. *Duryea*, 11 id. 324, 328, 329; *Wood* v. *Brown*, 34 id. 337, 343; *Chipman* v. *Montgomery*, 63 id. 221, 235; *Stagg* v. *Jackson*, 1 id. 206; *N. Y. Inst. for the Blind* v. *How's Exrs.*, 10 id. 84; *Parsons* v. *Lyman*, 20 id. 103; *Mosely* v. *Marshall*, 22 id. 200; *McNaughton* v. *McNaughton*, 34 id. 201; *Bascom* v. *Alvertson*, id. 584; *Whitson* v. *Whitson*, 53 id. 479; *Cushman* v. *Horton*, 59 id. 149; *Hoppock* v. *Tucker*, id. 202; *Teed* v. *Morton*, 60 id. 502; *Van Vechten* v. *Keator*, 63 id. 52; *Lawrence* v. *Lindsay*, 68 id. 108; *Luce* v. *Dunham*, 69 id. 36; *Wheeler* v. *Ruthven*, 74 id. 428; *Ferrer* v. *Pyne*, 81 id. 281; *Leggett* v. *Leggett*, 24 Hun, 333.)

ANDREWS, Ch. J.  The objection that the surrogate had no jurisdiction to render the decrees in question is, we think, well taken.

The proceedings were instituted by the filing of a petition before the surrogate of the county of New York, on the 7th day of June, 1870, by Samuel W. Cragg, administrator of Mary Alice Cragg, deceased, setting forth that Mary Alice Cragg was the daughter of Elisha Riggs, deceased, late of the city of New York, and beneficially interested in the estate of said Elisha Riggs, and in a trust created by his will; that the testator died August 3, 1853, and that his will was duly admitted to probate before the said surrogate, September 27, 1853; that on the same day letters testamentary were issued to George W. Riggs and Joseph K. Riggs, two of the executors named therein; that the testator left personal estate amounting to about $900,000; that the executors were also by the will

appointed trustees of the trust created thereby ; that they have never rendered any account of their proceedings as executors, nor as trustees under the will, of the share of the testator's estate set apart for the benefit of his daughter Mary Alice, for life. The petition concludes with a prayer that an order may be issued, requiring the said George W. Riggs and Joseph K. Riggs to render an account of their proceedings as executors, and also as testamentary trustees and for general relief. The surrogate, upon presentation of the petition, issued a citation pursuant to the prayer of the petition, which was served on the executors. The executors appeared on the return of the citation and filed separate accounts as executors and trustees, viz.: an executors' account extending from August 3, 1853, to May, 1870, and two accounts as testamentary trustees, one extending from August 3, 1853, to June 29, 1860, and the other from the latter date to March 9, 1870. The proceedings finally resulted in two decrees made by the surrogate, February 24, 1881, settling the accounts of the executors and trustees with the estate of Mary Alice Cragg, and adjudging the balance due. By the decree on the executors' account, it was adjudged that there was due to the estate of Mary Alice Cragg the sum of $50,578.06, which the executors were directed to pay to her administrator. The account of the executors as testamentary trustees was settled and allowed at $120,104.44, which sum was adjudged to be the balance in the hands of the trustees to the credit of the estate of Mary Alice Cragg, and which sum, less costs and expenses, was also decreed to be paid by the trustees to her administrator, and in addition the trustees were directed to transfer and deliver to him sixty-six shares of the capital stock of the New York Gas-light Company, and the amount of certain dividends thereon. The decree of the surrogate was affirmed by the General Term.

For a proper understanding of the jurisdictional question, it is necessary to refer to certain facts disclosed by the record. The testator, Elisha Riggs, died August 3, 1853, leaving a widow and six children, five sons and one daughter, surviving. Two of his children, William H. Riggs and Mary Alice Riggs,

were then minors, the latter having been born June 29, 1839. His will was dated May 17, 1844, to which a codicil was added June 7, 1851. The testator at the time of his death was possessed of a large personal estate and also owned real property, the amount of which does not appear. The will was duly proved, and letters testamentary were issued thereon to George W. Riggs and Joseph K. Riggs, who qualified as executors and who also accepted the trust for the benefit of Mary Alice Cragg created by the will, and have since managed the estate. The testator, by his will, after directing the payment of his debts, and providing for the widow, and making certain bequests, provides, in the *ninth* clause, as follows : " *Ninth.*— All the rest, residue and remainder of my property and estate, both real and personal, etc., I hereby give, devise and bequeath to my six beloved children (naming them), and to their respective heirs, executors, administrators or assigns, in equal portions, or share and share alike, except the portion or share of my said daughter, Mary Alice Riggs, which I dispose of for her sole and separate use and benefit, whether married or unmarried, as follows, that is to say : I give, devise and bequeath the same to my executors hereinafter named, in trust, for her separate use and benefit, during her natural life, to invest and improve the same at their best discretion, and to pay to her, from and after her arrival at the age of twenty-one years, or marriage, with the consent of her mother, if living, whichever event may first happen, into her own hands, whether married or unmarried, and upon her own separate receipt, to be given from time to time, and not by way of anticipation, the net interest, dividends, or other periodical income thereof ; and at her decease, I hereby give, devise and bequeath the capital of her said share, or portion, to her issue, or other descendants, in equal portions, or share and share alike, etc. ; and should my said daughter not marry, or marry, and have no issue that shall survive her, and should she survive her husband, then, upon her decease, I hereby give, devise and bequeath her share and portion of my residuary estate, both real and personal, to her surviving brothers, and their issue,

share and share alike, except that the issue of any deceased brother are to take by representation." The ninth clause further provides that, in case his daughter should marry, and should die, leaving no issue, but leaving her husband surviving, he should receive an annuity of $1,000, etc. By the tenth clause, the executors are authorized to make advances, from time to time, for the support, maintenance and education of his minor children, during their minorities, not exceeding $800 a year, and they are directed to keep a separate account with each child, charging him, or her, with such advances.

Mary Alice Cragg became of age, June 29, 1860. She was married to the petitioner, Samuel W. Cragg, in 1869, and died March 9, 1870, intestate, and without issue, and the petitioner was duly appointed administrator of her estate. It seems, from what can be gathered from the record, although there is no distinct proof upon the subject, that the executors, from time to time, after the death of the testator, set off portions of the estate to the credit of the trust, but retained a portion of the share of the testator's daughter, as an undivided interest. The surrogate, in stating the executor's account, ascertained, in the first place, the whole income received by the executors, as such, from the death of the testator, in 1853, to the death of Mrs. Cragg, in 1870, and awarded to her one-sixth of the net income for that period, deducting such payments as were properly chargeable to her. In stating the trustees' account, he charged the executors with the whole income of the trust estate during the same period, and ascertained the balance by deducting therefrom the sums properly chargeable to her, as in the other case. Both accounts are largely made up of income on the one-sixth share of the estate given to Mary Alice for life, which accrued between August 3, 1853, the date of the testator's death, and June 29, 1860, the day on which she reached her majority, and interest thereon. The testator, at the time of his death, owned stock in various railroad, and other corporations, upon which, after his death, stock dividends were declared, from time to time, which were received by the executors and trustees, and credited to capital, and not to

income, amounting, in the aggregate, to a large sum. The surrogate, in making up the accounts, held that the stock dividends were, as between the life-tenant and the remainderman, income, and not capital, and were to be credited as income in the accountings.

The citation, as has been said, by which the proceeding was initiated, was a citation to the executors only. The residuary legatees, other than the executors, have not been brought in, and they were in no way made parties to the proceeding, or to the decrees of the surrogate. So far as appears, they were neither served with process, nor did they appear, or take any part, in the litigation. Several interesting and important questions, involved in the determination of the surrogate, have been presented upon the appeal, and argued with great ability by the respective counsel. One of these questions respects the right, as between life-tenant and remainderman, to the income on the share of Mary Alice Riggs, under the will of her father, which accrued during her minority. It is claimed, on the part of the respondent, that by the true construction of the will, the income of her share which accrued during her minority, beyond the sum directed to be paid for her support and maintenance, was to be accumulated, and to be paid to her on arriving at the age of twenty-one years; and that this construction is necessary to effectuate the intention of the testator to give to his daughter the "use and benefit" of the equal one-sixth part of the estate during her life; and other provisions of the will, not herein referred to, are relied upon as confirming this construction. On the other hand it is claimed by the executors, that the share of the daughter, having been vested in the trustees upon the trust to "invest and improve" the same, and to pay to her "from and after" her arrival at majority, the "net interest, dividends or other periodical income thereof," it was the intention of the testator that the share should be augmented by adding the surplus income accruing during the daughter's minority, to the capital of the share, and to give to her the income only after that time accruing from the original capital of the share and the additions, and that it is only by this construction that

effect can be given to the directions of the testator to the trustees to improve the share given in trust.

When the construction of the will is settled, a further question may arise as to the validity of the trust as a trust for accumulation, and if void, whether the surplus income goes to the daughter or to the remainderman, as persons entitled to the next eventual estate in the fund.

Another important question involved in the decision of the surrogate, relates to the distribution as between capital and income of stock dividends, declared and received by the executors and trustees during the existence of the life-tenancy. Are stock dividends, representing earnings and profits of a corporation, expended in construction or improvements of the corporate property, declared during the life-tenancy, to be regarded as between the life-tenant and remainderman, as accretions to the capital, or as income? If declared out of accumulated profits earned before the inception of the life-tenancy, are they capital or income as between these two interests? If they represent earnings made partly before and partly during the life-tenancy are they apportionable? The right to stock dividends as between tenant for life and remainderman, has not been considered by the court of last resort in this State. The decisions upon the subject in other States and in England are conflicting, and it will be the duty of this court, when occasion arises, to seek to settle the question upon principle, and establish a practical rule for the guidance of trustees and others, which shall be just and equitable as between the beneficiaries of the two estates.

The surrogate decided that surplus income of the share of the testator's estate given to his daughter for life, which accrued during her minority, was not, by the true construction of the will, to be regarded as an accretion to the capital, but was income, payable to the tenant for life on her reaching her majority, and he also decided that stock dividends declared during the life-tenancy belong to the life-tenant and not to the remainderman. It is obvious that the five sons of the testator, who, in the event which has happened, are entitled as

remaindermen to the share given to his daughter for life, are
interested in the determination of these questions. They were
adjudicated by the surrogate in favor of the daughter's personal
representative, in a proceeding between him and the executors
exclusively, without bringing in three of the sons of the testa-
tor, or giving them an opportunity to be heard. The de-
crees require the executors and trustees to pay over the fund
to the petitioner, and when executed, the fund will pass
beyond the control of the court into his possession. It is
plain, we think, that if, instead of resorting to the Surrogate's
Court, the petitioner had filed a bill in equity for the same
relief, the court would not have proceeded to a decree in the
case until all the parties interested in the questions, had by
amendment or other appropriate proceeding, been brought in
and made parties to the action. For it is a general rule of
courts of equity that all persons materially interested in the
object of the suit must be joined, so that there may be a com-
plete and final determination of the controversy. (1 Dan. Ch.
Pl. 190; Story's Eq. Pl., § 99.) There are exceptions to
the rule, where its enforcement would cause great practical
inconvenience, or where the interests of persons, not parties, are
deemed to be protected by representation. Of the latter class is
the case of a bill filed by a single creditor or legatee, against an
executor or administrator, for the satisfaction of his single debt
or legacy, without joining the other creditors or legatees, or the
next of kin, although the allowance of the particular debt or
legacy may diminish the fund in which they are interested. But
if special facts exist, which render the actual joinder of all the
persons interested proper, as where there is a deficiency of
assets, the bill must make all the persons so interested parties,
either as plaintiffs or defendants, or where their rights are iden-
tical or not inconsistent, it must be filed in behalf of the
plaintiff and all others in the same relative situation. (Story's
Eq. Pl., § 140; *Brown* v. *Ricketts*, 3 Johns. Ch. 553; *Hallett* v.
*Hallett*, 2 Paige, 15; *Egberts* v. *Wood*, 3 id. 517.) And in
actions against trustees in respect to the trust property or for
an accounting, and the administration of the trust estate, all

the *cestuis que trust* or beneficiaries are necessary parties. (Story's Eq. Pl., § 207; *Holland* v. *Baker*, 3 Hare, 69; *Wakeman* v. *Grover*, 4 Paige, 23.)    The principle that persons not actually parties to a suit in equity may nevertheless be bound by the decree, on the theory of representation, has, however, no proper application to a case like this.    The personal representatives of the daughter and the sons of the testator have a common interest in the accounting by the executors and trustees, and conflicting interests in the distribution.    Their interest in the taking of the accounts is hostile to the executors and trustees, and it will be a violation of equitable principles to permit executors having an adverse interest to represent parties not before the court.    The interest, moreover, of the absent parties is not indirect and consequential, but immediate and direct.

The proceeding in question was not an action in equity, but a proceeding before a Surrogate's Court, a tribunal of peculiar and limited jurisdiction, which can exercise only the powers prescribed by the statute and such incidental powers as are requisite to the execution of the powers expressly given, or to the attainment of justice in the particular cases to which its jurisdiction extends. (*Sipperly* v. *Baucus*, 24 N. Y. 46; *Stilwell* v. *Carpenter*, 59 id. 414; *Bevan* v. *Cooper*, 72 id. 317.) Unless a warrant for the jurisdiction exercised by the surrogate in the case can be found in the statute, either expressly or by implication, the whole proceedings are void.    By the general statute defining the powers of Surrogates' Courts, power is conferred upon surrogates among other things to direct and control the conduct and settle the accounts of executors, and to enforce the payment of debts and legacies (2 R. S. 220, § 1), and the powers so conferred are to be exercised in the cases and in the manner prescribed by the statutes of the State. (Id.) By chapter 782, Laws of 1867, a new power was conferred to compel testamentary trustees to render accounts of their proceedings in the same manner as executors and administrators.    On referring to the particular provisions of the statute regulating the subject of accounting by executors before the surrogate, it will be seen that two modes of accounting are

provided for. One is had at the instance of a particular creditor or legatee, upon a citation served on the executor, which may be followed by a decree for the payment of the particular debt or legacy, of the party instituting the proceeding. (2 R. S. 92, § 52; id. 116, § 18; *Guild* v. *Peck*, 11 Paige, 475.) The other is what is known as the rendering of a final account, which may be had at the instance of the executor, upon a citation requiring the creditors, legatees and (in case of intestacy) the next of kin of the decedent, to appear and to attend the settlement of the account, which must be served on all persons to whom it is directed, or the accounting may be had upon the order of the surrogate, upon his own motion and without the application of an interested party. (2 R. S. 92, §§ 52, 60, 61; *Smith* v. *Lawrence*, 11 Paige, 206.) When the account shall be rendered and finally settled, the surrogate is authorized to make a decree for the payment and distribution of the estate remaining in the hands of the executors, to and among the creditors, legatees, widow and next of kin of the deceased according to their respective rights, and in such decree he shall (the statute declares) " settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, to whom the same shall be payable, and the sum to be paid to each person." (2 R. S. 95, § 71.) The proceeding in this case was a proceeding for à special accounting in the first mode referred to. The executors had never rendered an account, and it was not turned into a final accounting, either upon their application or by the order of the surrogate. Such questions, therefore, only, could be determined by the surrogate, as were appropriate to the limited and special nature of the proceeding. The provision authorizing the surrogate to compel an accounting and the payment of a debt or legacy, upon the application of a particular creditor or legatee, cannot, we think, be construed as authorizing a decree of payment, except where the right to the debt or legacy, is undisputed. Other legatees, or creditors, may incidentally be affected by a decree for the payment of a particular debt or legacy, as such payment would reduce the fund in the hands of

the executors or administrators, but this interest is indirect and consequential, and they are bound upon the theory of representation. But when the proceeding is by a creditor to compel the payment of a debt, and the debt is not admitted, and is disputed, the surrogate has no power to adjudicate it. He must await the ascertainment of the debt, by judgment, or upon a reference in the manner pointed out by the statute. This was decided in *Tucker* v. *Tucker* (4 Keyes, 136). This decision was based in part upon the special provisions of the statute relating to disputed claims, and applies as well to a provisional as to a final accounting. The statute does not in terms preclude the surrogate from decreeing the payment of a disputed legacy upon the application of one party upon a provisional accounting when the other parties interested are not before him, but the inhibition is we think necessarily implied. When the surrogate, upon such an application, can see that other persons claim or may claim the same thing as the petitioner, and that a real question is presented as to the right of one of several persons to the legacy or fund, natural justice requires that he should not proceed to a determination without the presence of all the parties who may be affected by the adjudication. The statute provides for bringing in all the parties in interest on the final accounting, and in that proceeding, jurisdiction is conferred to settle and adjust conflicting rights and interests, while no such authority is conferred in the special proceeding in favor of a single creditor or legatee, and such authority was not, we think, intended to be given. It is no sufficient answer that the absent parties will not be bound by the decree. The fund in the hands of the executor is a trust fund, and in this case the fund in controversy was held under a formal trust. A court of equity would not permit it to be paid over without giving all the parties interested in the determination of the question, an opportunity to be heard. The surrogate cannot award it to one, and leave the others, who have not been summoned, to a doubtful remedy against the trustees, or to follow the fund into the hands of the personal representative of Mrs. Cragg.

The question of the jurisdiction of the surrogate to pass upon

the construction of a will, has been much argued in this case. In support of the objection to this jurisdiction, the case of *Bevan* v. *Cooper* (72 N. Y. 317), is relied upon, in which the point decided was that a surrogate had no jurisdiction to determine the question whether certain legacies given by the will in that case, were charged upon real estate. The question was not, so far as appears, involved in the accounting, and was not necessary to be determined by the surrogate as incident to the accounting or distribution. The surrogate could not enforce the payment of the legacies out of the land, and as was said in the opinion, his decree adjudging the lien claimed would be *brutum fulmen*. It is doubtless true that a surrogate has no general jurisdiction in the construction of wills. But where the right to a legacy depends upon a question of construction, which must be determined before a decree for distribution can be made, the surrogate has, we think, jurisdiction under the broad grant of power conferred by section 71, upon a final accounting where all parties interested are before the court, to determine such construction as incident to the authority to make distribution. There are many cases in this court, on appeals from the decisions of surrogates on final accountings, which involved the interpretation and construction of wills, and no question was made by counsel, or suggested by the court, that the surrogate had no power to construe a will when necessary to the accounting and distribution. (*Stagg* v. *Jackson*, 1 N. Y. 206; *N. Y. Institution, etc.*, v. *How's Ex'rs*, 10 id. 84; *Parsons* v. *Lyman*, 20 id. 103; *McNaughton* v. *McNaughton*, 34 id. 201; *Bascom* v. *Albertson*, 34 id. 584; *Whitson* v. *Whitson*, 53 id. 479; *Cushman* v. *Horton*, 59 id. 149; *Hoppock* v. *Tucker*, id. 202; *Teed* v. *Morton*, 60 id. 502; *Lawrence* v. *Lindsay*, 68 id. 108; *Luce* v. *Dunham*, 69 id. 36; *Wheeler* v. *Ruthven*, 74 id. 428; 30 Am. Rep. 315; *Ferrer* v. *Pyne*, 81 N. Y. 281.)

But for the reason that the jurisdiction of the surrogate is limited and special, and that he could not in the proceeding under review, determine the question as to the right to the fund in controversy, the judgment below should be reversed. We regret that this conclusion prevents a final disposition of this already protracted litigation.

Judgment of the General Term and decree of the surrogate reversed.

All concur.

Judgment reversed.