CAYUGA COUNTY.—HON. JOHN D. TELLER, SURRO-
GATE.—January, 1889.

MATTER OF GEORGE.

*In the matter of the judicial settlement of the account
of* JENNIE E. PEARSONS, *as executrix of the will
of* HATTIE P. GEORGE, *deceased.*

The transfer of property by a declaration of trust depends on the same
facts that are necessary to create a valid gift *inter vivos*, except that it
is not essential that the property should be delivered to the beneficiary,
or that he should be informed of the trust.  To establish such transfer
the donor or creator of the trust must have relinquished all ownership
of the property; he must have absolutely parted with the beneficial
interest.  If he has reserved any control of the property it can only be
as trustee or representative of the beneficiary.
A decedent had deposited money in the name of her son, who was thrift-
less and improvident.  Afterwards she drew out this money and then
delivered most of it to the person who was afterwards her executrix,
asking her not to let any one know she had the money, saying that she
would not even let her husband know it for he would not be troubled
about it, that the executrix had been a kind friend to her son and her-
self, that she had tested her friendship, and knew she had a mother's
heart, and asked her whether she would be a mother to testatrix's son.
*Held,* that the original deposit in the bank created an irrevocable gift
to the son even though he was entirely ignorant of it, that it came back
into the possession of testatrix as trustee, and that her executrix hav-
ing obtained possession of the fund as such executrix, must account
therefor to the son.
The Surrogate's Court has jurisdiction under § 2743 of the Code of Civil
Procedure to decide as to the validity of a trust such as the one in
question, as without such a determination a distribution of the estate
could not be had.

ACCOUNTING of Jennie E. Pearsons, executrix of
the will of Hattie P. George, deceased.

The facts appear in the opinion of the Surrogate.

MATTER OF GEORGE.

H. V. HOWLAND, *for* JENNIE E. PEARSONS, *executrix*.

S. E. PAYNE *and* E. C. AIKEN, *for* CHARLES L. GEORGE *and* NOYES P. JENNESS. JOHN M. BRAINARD, *special guardian*.

THE SURROGATE.—The above named executrix filed her petition in February, 1888, asking the judicial settlement of her accounts, and to that end that all persons interested in the estate of the decedent be cited to attend such settlement. The parties so cited were the husband of the decedent, her son by a former marriage, and three infant grandchildren, the descendants of a deceased son. Letters testamentary were issued to the petitioner, July 29, 1886, the same month in which the will of the decedent was admitted to probate in this court. The will is dated December 29, 1882. It contains directions as to the funeral, numerous specific legacies of clothing, jewelry, books and other small articles, a very large number of which are to the executrix. It is stated that these things are given to her, " because she is the only one who has been kind to Noyes," meaning the son of the testatrix.

The third clause of the will reads : " Noyes P. Jenness—all my moneys in the Auburn Savings Bank to be given him at my sister, Jennie E. Pearson's discretion." A few books and household articles are given Noyes. A gold watch and chain and bead watchcase are given to the granddaughter, Ella Jenness. No other provision is made for the grandchildren, except in the thirteenth clause, which is Noyes, Ellie, Georgie, Charlie and Jennie, contents of little fur trunk," and in the sixteenth clause, " three boxes

of handkerchiefs for Jennie to dispose of between
Noyes, Ellie, Georgie and herself." The only pro-
vision in the will in favor of the testator's husband, is
a legacy of furs, satin dolman and jet jewelry, " to be
disposed of among his friends," and a pair of opera
glasses.    An inventory was filed November 20, 1886,
made up of the books, furniture, jewelry and clothing,
amounting to $86.80.

In the account, the executrix charges herself with
the amount of the inventory, and with money re-
ceived from bank, $212.25, and credits herself with
having disposed of the inventory and property, in ac-
cordance with the terms of the will, and with having
paid bills to the amount of $228.    A long list of arti-
cles is set forth, with the statement that they remained
in the house, and were claimed and taken by the de-
cedent's husband.    In the account, it is stated that a
portion of the goods mentioned in the will, including
the watch and chain bequeathed to Ellie Jenness, were
given away by the testatrix in her lifetime.    Objec-
tions to the account were filed by Noyes P. Jenness,
and decedent's husband, alleging that assets not in-
cluded in the inventory have come into the hands of
the executrix to the amount of about thirty-six hun-
dred dollars ; that of the amount $212 was a gift
*causa mortis* from the testatrix to her husband, and
had been delivered to the petitioner for him, and the
balance was held by the testatrix at her decease in
trust for her son Noyes and the representatives of
her deceased son Joseph Kendall Jenness.

The executrix claims that the testatrix gave to her

in December, 1884, the sum of $3,360, and afterwards the further sum of $40.

The accounting involves the determination of the adverse claims to this money; to the $212 alleged to have been given to the husband of the testatrix, and the watch and chain mentioned in the will as a legacy to the grandchild. The proof shows that in 1864 the testatrix opened an account with the Auburn Savings Institution in the name of her son, Noyes P. Jenness. The money was soon drawn out, and account balanced. On the 21st of May, 1867, a deposit of $800 was made to the credit of the same party. Other credits were made and cash deposited, the interest credited until January, 1878, when the total amount to Noyes' credit was $1,567.13. Credits of interest were entered in the book semi-annually until June 30, 1884, and from January, 1878, to January, 1881, money to the amount of $500 was drawn out by Mrs. George, and it appears that all, or most of it, was sent by her to Noyes. According to the evidence, Noyes, on account of waywardness and improvidence, was considered by his mother to be incapable of taking care of money, and he was not made acquainted with the facts of the deposits until after his mother's death. On the 15th of October, 1867, Mrs. George opened an account at the same bank in the name of her son, Joseph K., which, with the deposits and accumulated interest, amounted, in January, 1882, to $1,104. No part of these deposits was drawn out of the bank until January, 1882, when $50 was drawn. The same amount was drawn out in August of that year, and $100 in January, 1884. At the time of drawing the $100 from the first ac-

count in January, 1878, the treasurer of the savings bank refused to pay any money to Mrs. George unless there was something in the book to show she had the right to draw it.   She said she wanted the boys' names in the book so that, in case of her death, the money would go directly to them.   It was then suggested by the treasurer, and agreed to, that, without erasing either of the names, there should be added the words, " to the order of Mrs. C. L. George."   This was then done in both books, under the names of the boys respectively.

On the 12th day of December, 1884, the testatrix signed a check, written by the executrix, in these words: " Auburn Savings Bank, pay to Mrs. I. E. Pearson, all moneys belonging to N. P. Jenness; " also a check in these words : " Auburn Savings Bank, pay to Mrs. Isaac E. Pearson, all money remaining in bank belonging to Joseph K. Jenness." Upon the following day, the executrix received from the bank, upon the first named check, the sum of $1,513.96, and upon the other, the sum of $2,073.59.   Of the amount, $3,500 was paid by the bank in checks, payable to Hattie P. George or bearer, and the balance was paid to her in money.   The checks were cashed, and the proceeds, with the money received from the savings bank, delivered by the executrix to Mrs. George.   On the 18th day of December, 1884, $460 of the money was deposited in the National Bank of Auburn, to the credit of Harriet Pearson, George and Mary J. Pearson, payable to either of them.   A new certificate for $500, was taken by the executrix in her name, March 27, 1885, and the other indorsed by

her, and surrendered. She says the forty dollars, which made the even amount, Mrs. George had taken from the money drawn from the savings bank. In about two weeks after the money was drawn from the savings bank, Mrs. George delivered $2,900 of the proceeds to the executrix, who, on the 2d day of January, 1885, deposited it in the banking house of William H. Seward & Co. of the city of Auburn, taking a certificate of deposit therefor, in the name of Mrs. Harriet Pearson, George and Mary Jane Pearson, payable to the order of either of them, with interest, if left three months.

Mrs. George died on the 17th day of February, 1885.

On the first day of July, 1885, the executrix indorsed the certificate in her individual name, presented it at the bank, received thereon $1,000, and the interest, and took a new certificate for the $1,900, in the names of Mrs. Harriet Pearson, George and Mary Jane Pearson, payable as before. On January 4, 1886, this certificate was indorsed by her, and surrendered, and another certificate for the same amount taken, payable as the preceding ones were. This has since been canceled, and the proceeds drawn by the executrix. The balance of the money, received by the decedent, was given away or disposed of in some way by her, and none of it appears to have come into the hands of the executrix except what is accounted for, or was paid to the decedent's husband. The testatrix asked the executrix, upon certain conditions, to give the doctor, her husband, $200, and told her to tell him it was Noyes' money.

It is testified by the executrix that, at the time the

$2,900 was delivered to her, Mrs. George said: "Jennie, dear, that is for you, . . . . . for who has been so kind a friend to Noyes and me as you." "She said she had tested my friendship and knew I had a mother's heart, and asked me if I would be a mother to him. I said the money belonged to him. I said, when she handed me the money: 'this for Noyes.' She said: 'No, no, no.' She said, at one time, she had the bounty money during the war, and she had no peace until he spent it all. She said it would never do to let him know there was a penny, and she asked me to promise not to let any one know that there was any money, not even Isaac. I asked her if .I should let the doctor, her husband, know. She said: 'I can't leave this with the doctor. Jennie, you know I could never ask him to do anything, for he wouldn't be troubled with this.' She spoke about the bounty money. She had no peace as long as there was any of it left. I took the money home with me."

From this transaction the executrix claims she became the absolute owner of the $3,400 deposited in the two banks, by virtue of a gift *inter vivos* from the testatrix. It is contended upon the other side that the beneficial interest in these moneys passed to the sons of the decedent when she deposited the same to their credit, and that she was thereafter merely a trustee for them, and had no power to dispose of the money in violation of the trust.

The transfer of property by a declaration of trust depends upon the same facts that are necessary to create a valid gift *inter vivos*, except that it is not essential that the property should be delivered to the

*cestui que trust,* or that he should be informed of the trust. The donor or creator of the trust must have relinquished all ownership of the property. He must have absolutely parted with the beneficial interest. If he reserved any control of the property, it can only be as trustee or representative of the *cestui que trust.*

The case of Martin v. Funk, 75 *N. Y.* 134, is a leading one upon this subject. S. deposited in the savings bank two sums of money belonging to her, declaring that she wanted the accounts to be in trust for M. and K., who were sisters. S. retained the passbook, and the money remained in the bank, with its accumulated interest, until the death of S., except she drew out one year's interest. It was held that the transaction was a valid declaration of trust; that the title to the deposits passed to M. and K., and that S. constituted herself trustee and held the books as such, although M. and K. had no knowledge of the transfer.

In the case of Willis v. Smyth, 91 *N. Y.* 297, it was held that depositing a sum of money in the savings bank, to the credit of the depositor in trust for her daughter, entitled the latter to the fund, although one such deposit has been drawn out by the mother, and she had received interest upon the account.

In the case of Mabie v. Bailey, 95 *N. Y.* 206, it was held that the deposit of money in a bank, to the credit of the depositor as trustee for another, is *prima facie* evidence of an intent to transfer the beneficial interest in the fund. It was intimated that " surrounding circumstances might be shown, to vary or explain the apparent character of the acts and intent with

which they were done," which was left undecided by the case of Martin v. Funk, *supra*.

In the case of Barker v. Harbeck, 17 *N. Y. State Rep.* 678; 2 *N. Y. Supp.* 425, it was proven that the defendant's testatrix, Elvira Harbeck, in 1859, deposited with the Bowery Savings Bank $350 "for Henrietta Barker," who was her sister. Some years after the deposit was made, Mrs. Harbeck drew out the money and applied it to her own use. The action was brought by the representatives of Henrietta Barker against the executors of Mrs. Harbeck to recover the amount of the deposit. The plaintiff recovered damages.

The court, upon appeal, in affirming the judgment, say : " Mrs. Harbeck either deposited Henrietta Barker's money or constituted herself a trustee of the fund by a completed gift of the money deposited."

In the case of Scott v. Harbeck, 49 Hun 292, brought by a *cestui que trust*, claiming under the same party who created the trust passed upon in the case last cited, it was held that a similar deposit transferred the property, and that the act of withdrawing the money subsequently by the party who made the deposit did not affect the title of the *cestui que trust*.

In the case at bar, the deposit of the money in the savings bank to the credit of the sons of the testatrix is *prima facie* evidence of an intention to transfer to them the ownership of the funds. The declarations contained in the checks by which the money was drawn out of the bank, "all money belonging to N. P. Jenness," and "all money belonging to Joseph K.

Jenness," are evidence that the testatrix still considered the money to be the property of her sons.

All the evidence, taken together, satisfactorily proves that Mrs. George intended the money to be used for the benefit of her sons, except that she assumed to give away, and use for other purposes a small sum of it, a short time before her death. Her control of the money and her withdrawal of it from the bank are consistent with the theory of a trust, and her subsequent possession must, upon authority, be held to be in the capacity of trustee, rather than as the owner of the property. Even the statements, testified to by the testatrix because she thought she would be a mother to her son, and that he ought to be kept in ignorance of the fact that there was any money, and, when asked if the doctor, her husband, should not be told, she said: "I can't leave this to the doctor, . . . . . he wouldn't be troubled with it."

The decedent could not have thought the doctor would have objected to the trouble, if she was speaking of a gift. The intention must have been to make the executrix a trustee, rather than the beneficiary of a gift. The fact of the subsequent deposit to the order of both the decedent and the executrix indicates that the parties so understood it. No other explanation has been given.

The rule was laid down by Justice STORY, that a party for whose benefit a trust is created, may enforce its execution, although it was made without his knowledge, if it had not in the intermediate time been revoked by the person who created the trust. Eq. Jurisprudence, §§ 972–1045. There was at one time

some uncertainty as to whether trusts, created without pecuniary consideration, were revocable, before they came to the knowledge of the beneficiaries; but in the case of Martin v. Funk, it was said, that if the author of the trust entertained a belief that the deposits might be withdrawn during her life and the money converted to her own use, it would not change the legal effect of her acts, although she did not intend the objects of her bounty to know of her gift until after her death.

It was decided in the case of Mabie v. Bailey, *supra*, that a trust like the one under consideration, once established, no power of revocation having been reserved, was irrevocable. It follows that the acts of the testatrix in the case at bar, in the withdrawal of the deposits and transfer of the money, could not affect the rights of the objects of her first gifts, if she so intended. Of the money transferred to the executrix, the evidence leads to the conclusion that it was the intention of the decedent to preserve part at least for the benefit of her unfortunate son.

It is contended that this court has no jurisdiction to direct distribution of this property, and that the alleged trust having been found to be valid, the proceeding so far as this fund is concerned should be dismissed. Section 2743 of the Code provides: "where an account is judicially settled, as prescribed in this article, and any part of the estate remains and is ready to be distributed to the creditors, legatees, next of kin, husband or wife of the decedent, or their assigns, the decree must direct the payment and dis-

tribution thereof to the persons so entitled, according to their respective rights."

It was held in the case of Collyer, 4 *Dem.* 24, that the Surrogate's Court had jurisdiction, under this section, to try and determine the validity of a trust like the one in question, since without such determination, the amount of the distributive share of each of the next of kin could not be fixed.

So in the case of Fowler v. Lockwood, 3 *Redf.* 465, it was decided that the Surrogate, as an incident to his power to determine questions concerning distributive shares had the power to decide as to the validity of alleged gifts *causa mortis* by a decedent. This case came under the Revised Statutes (vol. 2, p. 95, § 71), from which section 2743 of the Code is taken.

In the case of Killick, as Committee, etc., v. Monroe County Savings Bank, 17 *N. Y. State Rep.* 283 ; 1 *N. Y. Supp.* 501, the question arose whether the widow of a lunatic, who was his administratrix, was the owner of money which had been deposited in a bank in their names jointly. The court, at general term, in this department, held that upon her accounting as administratrix, the question as to whether it belonged to her individually or as administratrix can be determined.

The rule was stated in Riggs v. Cragg, 89 *N. Y.* 479, 492, that where the right to a legacy depends upon a question of construction of a will, which must be determined before a decree for distribution can be made, the Surrogate has jurisdiction . . . . . upon a final accounting, where all the parties interested are before the court, to determine such construction, as

incident to the authority to make distribution.    The Court of Appeals has also decided that the validity of a release by a party claiming property in the hands of an administrator or executor may be determined by the Surrogate upon an accounting.    Harris v. Ely, 25 *N. Y.* 138.    See the Matter of Read, 41 *Hun*, 95, in the Fifth Department of the Supreme Court, to the same effect.

In view of the authorities quoted, there can be no doubt that this court, upon the judicial settlement of the accounts of this executrix, may decide whether there was a gift of the money drawn from the savings bank to the executrix, and, to that end, to decide whether the money was the property of the decedent. The evidence fails to establish such a gift, and, as before stated, it is sufficient to convince the court that the funds deposited in the Auburn Savings Institution afterwards the Auburn Savings Bank were the property of Noyes P. Jenness and Joseph K. Jenness respectively.    As it was held by the testatrix in trust, upon her death, her executrix took the title to the same as trustee by virtue of her office ; Emerson v. Bleakley, 2 Abb. App. Dec. 27, and must account therefor as executrix.    Joseph K. Jenness being dead, his interest can only be paid to his legal representatives, and as the testatrix used a part of the funds in her lifetime, such representative should be made a party to this proceeding before it would be proper to make distribution of the funds.

As to the alleged gift of $212 to the decedent's husband, the necessary elements do not exist to constitute a valid gift *inter vivos* or *causa mortis*, as was

practically decided in an action brought in the Supreme Court to determine the title to the money. Moreover, it is shown that this money belonged to the testator's son, and could not have been given as alleged.

As to the gift of a watch, the evidence does not sustain a gift, and it should be delivered to the party named in the will, or its value accounted for by the executrix.

Costs are allowed to the petitioner, to Noyes P. Jenness and to the special guardian.