## *In re* McCABE'S ESTATE.

*(Surrogate's Court, Westchester County. November, 1891.)*

SURROGATE'S COURT—DISTRIBUTION OF ESTATE—ASSIGNMENT OF SHARES.

Under Code Civil Proc. § 2743, providing that on judicial settlement of the account of an executor or administrator, where any part of the estate remains to be distributed, the decree must direct the payment and distribution thereof "to the persons entitled" thereto, and that where the validity of a debt, claim, or distributive share is not disputed, or has been established, "the decree must determine to whom it is payable, * * * and all other questions concerning the same," the surrogate, in settling an account, has power to try and determine the validity of an assignment of his distributive share by one of the next of kin, who appears and attacks the assignment on the ground that it was made without consideration, and was procured by false and fraudulent representations; and it is no objection to the exercise of such jurisdiction that the relief sought is based upon equitable principles, depending upon complicated facts and equities.

Proceeding for the settlement of the accounts of Margaret McCabe as administratrix of the estate of Thomas McCabe, deceased. The schedule of the account filed by the administratrix alleged that Thomas A. Durning, one of the next of kin of decedent, had assigned his interest in the estate to Rosannah Hughes; and Durning objected to the account on the ground, among others, that the assignment was without consideration, and was procured to be executed by him by means of false and fraudulent representations, and was therefore void.

*Charles F. Smith,* for administratrix. *Franklin Couch,* for Durning. *E. G. Halsey,* for Rosannah Hughes.

COFFIN, S. At the threshold of this matter lies the question as to the contestant's right to appear, and hence whether this court has any power to try and determine the validity of the alleged assignment of his share in the estate, for if he has, by his own act, ceased to have any interest in the estate, he cannot contest the account, and if, on the contrary, the assignment should prove to be void for any reason, then his objections to the same must be heard and determined. Now, if this court has no power to try the question as to the validity of the assignment, then this proceeding must be suspended until it shall be determined by some court having general jurisdiction. If such an action were to be commenced at once, it might take years to reach a final result, and indeed such an action might not be commenced at all; and in the mean time the other next of kin, who are content with the account as rendered, could not receive the shares due them now. The court would be practically enjoined from proceeding to the discharge of its duty by a party who would thus, in this respect, have all the power of a superior court. It has been intimated that the surrogate has power, incident to the authority conferred upon him by subdivision 3 of section 2472 of the Code, "to direct and control the conduct  *  *  *  of executors and administrators," to compel them to commence a like action. *In re Underhill,* 117 N. Y. 471, 22 N. E. Rep. 1120. But the closing sentence of that section says that the jurisdiction conferred thereby "must be exercised in the cases and in the manner provided by statute." I know of no statute conferring upon the surrogate any power to compel an executor or administrator to bring an action for any purpose in another court, nor any principal power to which it may be regarded as incident. Follow the matter out to its legitimate consequence. If it were done, it would be by an order to that effect, disobedience of which could be punished as a contempt of court by imprisonment. To deprive one of liberty of person is of so grave a character that there must surely be an express, and not a mere inferential, grant of power to justify the act. It may be safely asserted that no surrogate in this state has ever made such an order, and none who would venture to punish disobedience, were it made, as a contempt. Of course, were such a thing possible, it could only be done in this case by coercing the administratrix to bring the action by filing what was formerly known as a "bill of interpleader;" for she is no way interested in the controversy, except as its determination may have an effect upon the objections filed. It would be utterly preposterous to hold that this court can compel either the alleged assignor or assignee to commence such an action. While the statutes make no specific provision for the determination of a dispute as to the validity of an assignment, other than may be found in section 2743, they do abundantly provide for the speedy disposal of a disputed debt or claim by a reference, by an action, or by the short statute of limitation.

Prior to the Code a surrogate had no power to direct payment of any debt, legacy, or distributive share, etc., to any one but the creditor, legatee, or next of kin; but now, by the provisions of section 2743,[1] he may decree payment to their assigns according to the respective rights of the various persons; and it is further provided that "where the validity of a debt, claim, or distributive share is not disputed, or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same." The question here arises as to the power of the

[1] Code Civil Proc. § 2743, provides that on the judicial settlement of an executor's or administrator's account by the surrogate, where any part of the estate remains to be distributed, the decree must direct the payment and distribution thereof "to the persons so entitled," and that "where the validity of a debt, claim, or distributive share is not disputed, or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same."

surrogate to try and determine an issue as to the validity of the alleged assignment; for, if he cannot, how is he to decree to whom it is payable? The "debt" or "claim" referred to in this section relates only to a debt or claim against the deceased, and which may be disputed by the executor or administrator. *In re Underhill, supra; In re Strickland,* (Surr.) 5 N. Y. Supp. 851. Thus far, therefore, the section in question does not expressly nor by implication deprive the surrogate of jurisdiction to try it. Nor is the validity of a distributive share (whatever that may mean) in question. The share is not in question, but the right to it is. How, then, can the surrogate obey the law by decreeing and determining to whom it is payable, without first ascertaining whether the assignment is valid or not? And by the same section he is directed to determine all other questions than the validity of a disputed debt, claim, or distributive share. This, it strikes me, is one of those "other questions." Suppose there is an undisputed debt or legacy which is claimed by an assignee, and the validity of the assignment is disputed by the creditor or legatee. Can this court not—nay, must it not—try and decide the controversy, in order to obey the statute in determining to whom it is payable? And, again, suppose there is a legacy due to John Smith, and two persons of that name claim it. Must not the surrogate hear and determine the controversy? And so, where there are two persons, each claiming to be the widow of the intestate, must he not settle the question? Are not these direct powers, and are they not exercised in order to "determine to whom it is payable?" And is it not equally within his power to determine who is legally entitled to the share, by assignment or otherwise, in order that he may comply with that provision of the statute? It will not do to say that such a power, in a case like this, was not intended to be conferred upon surrogates, because the relief sought is exercised upon equitable principles, depending upon complicated facts and equities, for by section 2812, on the accounting of testamentary trustees, he is expressly authorized to try all such controversies; and so, on an accounting of executors or administrators, he must try all questions involved, except where forbidden, that stand in the way of settlement and distribution of the estate among those entitled, and for this purpose he may construe the will, (*Riggs* v. *Cragg,* 89 N. Y. 479,) and that is clearly the exercise of an equitable power as incident to the power conferred by section 2743, (*In re Verplanck,* 91 N. Y. 439.) And in the case of *Riggs* v. *Cragg,* the court recognized the power of the surrogate, when all parties were before him, to determine conflicting claims to a legacy, and it follows that he must determine the like claim to a distributive share. I see no reason to change the views on this subject expressed by me in *Strong* v. *Strong,* 3 Redf. Sur. 476, and in *Du Bois* v. *Brown,* 1 Dem. Sur. 317, which last decision was affirmed by the general term of this department.

It has been intimated that this court has no more power to try the validity of an assignment than of a release, and, as some of the courts have held that it has not the power to try the latter, it has none to try the former. There is some plausibility in this position. Still, there is this marked difference: A release is usually presented by the executor or administrator, purporting to have been executed to him by some one interested in the estate, and affects the amount of the balance alleged to be in his hands for distribution, while an assignment to another person does not. It is worthy of remark that most of the utterances in regard to the latter proposition appear to be based upon certain *dicta* of Judge FOLGER in the case of *Bevan* v. *Cooper,* 72 N. Y. 317, which were *obiter,* and before the enactment of the section of the Code in question, and of that conferring such power on the accounting of trustees. *In re Wagner's Estate,* 119 N. Y. 28, 23 N. E. Rep. 200, also *obiter; Sanders* v. *Soutter,* 126 N. Y. 193, 27 N. E. Rep. 263. The court of appeals has thus held, tentatively, that it involves a range of judicial power, in its determination, that an inferior tribunal, like this, could not exercise, on an accounting of executors or administrators, while the legislature declares that it can, on the account-

ing of testamentary trustees. *Ita curia, ita lex!* Compare sections 2743 and 2812. The first declares that, where any part of the estate remains to be distributed to the creditors, etc., or their assigns, the decree must direct the payment and distribution thereof to the persons so entitled, according to their respective rights, and that if the validity of a debt, etc., is not disputed, or has been established, the decree must determine to whom it is payable, the sum to be paid, and all other questions concerning the same. The latter provides that on the judicial settlement of the account of a testamentary trustee a controversy which arises respecting the right of a party to share in the fund or property must be determined in the same manner as other issues are determined. Are not these provisions, except as to a disputed debt, etc., in legal effect, identical? And the former section is declared applicable to proceedings under the latter, with the exception noted by section 2811. It has been well said, and may be repeated in this connection, that the tendency of recent legislation is not to restrict, but rather to enlarge, the powers of surrogates. While not craving to increase the burdens upon them by the exercise of doubtful powers, they should not hesitate, in the interests of justice, to employ those fairly within their reach. Seeing that there is no other mode of removing the obstruction thrown in the way of settling this estate by the raising of the questions as to the validity of the assignment, except by proceeding with its determination here, the ends of justice will be best subserved, and the statute complied with, if heard and disposed of by this court.