---

(17 Misc. Rep. 486.)

In re BEVIER'S ESTATE.

(Surrogate's Court, Ulster County. July, 1895.)

1. TESTAMENTARY TRUSTEES — COMMISSIONS — JURISDICTION OF SURROGATE.
   The surrogate's court has no jurisdiction to order payment of commissions to a testamentary trustee by his successor, where the trustee voluntarily paid over the funds without deductions for his commissions.

2. SAME—ACCOUNTING—COSTS.
   Costs of accounting by a testamentary trustee who had been removed, and by the executor of his deceased co-trustee, will not be allowed out of the estate, where the accounting was merely an incident to such death and removal.

Settlement of the accounts of the executors of the will of Charity H. Bevier, deceased.

Lounsbery & Jenkins, for James E. Ostrander, a former executor, who was removed by the surrogate.

Kenyon & Sharpe, for Charles W. Deyo, trustee appointed by the surrogate, and for Ann E. Hoornbeck, a life beneficiary.

John G. Van Etten, for Louise Schoonmaker, executrix, etc., of Augustus Schoonmaker, deceased executor named in the will.

John F. Cloonan, special guardian for Charity B. Hoornbeck, an infant remainder-man.

BETTS, S. Charity H. Bevier died in this county, March 21, 1878, leaving a last will and testament, in and by which she appointed Augustus Schoonmaker, Jr., and James E. Ostrander the executors thereof, which will was duly probated, and the executors entered upon the discharge of their trust. The will contains, among other provisions, the following:

"Third. I give and bequeath to my executors, hereinafter named, and to the survivor of them, the sum of three thousand dollars, in trust, to hold, manage, and invest the same, and to pay over the interest thereof semi-annually to my niece Ann Elizabeth Hoornbeck during her natural life; and, after her decease, I give and bequeath the one half of said sum to the children of my nephew Abram A. Hoornbeck, and the other half to George Hoornbeck and Jane Hoornbeck, the children of my nephew Cornelius H. Hoornbeck, deceased; but in case the said Ann Elizabeth shall become free and discharged from debts and liabilities at any time during her life, either before or after my decease, then it is my will and desire, and I so direct, that the said sum given in trust to my executors as above mentioned be paid over to her and belong to her, and be subject to her control and disposal."

The will also contained a residuary clause dividing the estate not specifically bequeathed into six parts, and bequeathing "one-sixth thereof the same in all respects as specified in the third clause of this will in regard to the sum named in that clause." A decree was entered in this court on the 9th day of March, 1880, settling the accounts of the executors under said will, and directing them to hold in their hands the balance of the estate as follows:

"One-sixth thereof, being the sum of $929.90, to be held by said executors under the provisions of said will in trust for Ann Elizabeth Hoornbeck, as directed by such will; and it is further ordered that the said executors continue to hold in trust for Ann Elizabeth Hoornbeck, under the provisions of said will, the bond and mortgage now held by them for that purpose for the sum of $3,000."

On October 11, 1894, a petition was filed in this court by Ann Elizabeth Hoornbeck, the life beneficiary under said will, reciting that Augustus Schoonmaker, Jr., was dead, leaving a last will and testament, in which Louise Schoonmaker, his wife, was named as sole executrix; that said will had been proved, and Louise Schoonmaker had entered upon the discharge of her duties as executrix; and that she had in her possession and custody the trust moneys and securities belonging to said estate, of which Ann Elizabeth Hoornbeck was entitled to the income. The petition also recited that James E. Ostrander, one of the executors of the will of Char-

ity H. Bevier, was on November 30, 1892, at a court of oyer and terminer held in and for the county of Ulster, convicted of an infamous offense, and sentenced by said court to be confined at hard labor in state prison at Dannemora for the term of seven years, and asked for a decree revoking letters testamentary issued to said James E. Ostrander, and that he be removed both as executor and as trustee under the said will, and that some competent person be appointed in his place. Citations were duly issued upon that petition, directed to all the persons interested, and such proceedings were had that on the 12th day of November, 1894, a decree was entered in this court removing said James E. Ostrander as executor and trustee, for the reasons cited in the petition and decree, and appointing Charles W. Deyo, of this city, trustee under the said will in his place. It appeared upon this hearing that shortly after the financial troubles of the Ulster County Savings Institution, which led to the arrest and conviction of Ostrander, the funds and securities remaining in his hands as trustee under said will were turned over to Augustus Schoonmaker, his co-executor and trustee thereunder. So the decree appointing Charles W. Deyo provided that, upon his filing a bond as therein directed, "the said Louise Schoonmaker, as executrix of the last will and testament of Augustus Schoonmaker, deceased, is hereby directed to deliver over to the said Charles W. Deyo the said trust funds and securities." On March 20, 1895, a petition was filed in this court by James E. Ostrander, the removed executor and trustee, asking that his accounts might be judicially settled, and that he might be paid the sum of $349.91 by the new trustee, Charles W. Deyo, for his commissions for acting as executor and trustee subsequent to the final accounting had in 1880, and up to the time of his removal. Upon this petition citations were issued bringing in all the interested parties. Objections were filed to the account, and against any commissions being allowed to Ostrander or any costs of the proceeding by the special guardian, and also by Charles W. Deyo, trustee, and Ann E. Hoornbeck, the life beneficiary. The attorney for Louise Schoonmaker, executrix of Augustus Schoonmaker, appeared in the proceeding, and, while not insisting that commissions be allowed her, did ask that the accounts of Augustus Schoonmaker as such executor and trustee be judicially settled, and that costs of this proceeding be allowed the said executrix. The various questions presented were warmly contested on the trial, and elaborate briefs presented by all parties. It appearing upon the hearing that the executors had had their commissions upon the final accounting in 1880 upon the $3,000 secured by bond and mortgage, and also upon the principal sum on deposit in the Ulster County Savings Institution, it was stipulated by Ostrander's attorneys that no claim should be made here for such commissions. Such corrections were made in the account upon the hearing that it is now claimed on behalf of Ostrander that he is entitled to commissions only upon the sum of $2,438.94 of income from said estate, instead of upon the sum of $7,348.15, as claimed in the petition; and this court is asked to

make an order or decree directing the present trustee to pay the commissions upon that sum to him.

The surrogate's court is one of limited jurisdiction. It can only exercise such jurisdiction as has been specially conferred by statute, together with such incidental powers as may be requisite to effectually carry out the jurisdiction actually granted. Riggs v. Cragg, 89 N. Y. 489, and cases there cited. No funds remain in the hands of Ostrander, or were in his hands at the time he was removed from office, by which he could retain the amount of his commissions, if any commissions were due him. He voluntarily paid to the life beneficiary under the will the entire income from the estate, making no deductions whatever for his commissions. Charles W. Deyo, by the decree of this court, was appointed trustee under said will of Charity H. Bevier, and must carry out the provisions of the will as to payment of income, which is to pay the same to said Ann Elizabeth Hoornbeck. Any contrary direction to him now as to the disposition of the income would be in opposition to the provisions of the will, and also to the decree of this court, which has not been opened, vacated, or altered. Commissions cannot now be allowed Ostrander payable out of the principal of the estate, for the reason that, if he is entitled to any commissions at all, it is from the income, and neither the surrogate's court nor any other court would have authority to pay these commissions from funds belonging to the remainder-man.

It was held in Re Underhill, 117 N. Y. 471, 22 N. E. 1120, by the court of appeals, Judge Peckham writing the opinion, that, where a surrogate's decree showed that an executor had overpaid a legatee, there was no jurisdiction in surrogate's court to direct the repayment by said legatee to the executor of the sum so overpaid, or to direct the entry of any judgment against said overpaid legatees in favor of the executor. It was also held by the court of appeals in Re Lang. 144 N. Y. 275, 39 N. E. 263, decided this year (Chief Justice Andrews writing the opinion), that where one executor had overpaid another executor as a legatee the sum of $1,756.25, $93.75 of which were commissions, and it appearing that there were no assets remaining in the hands of the accounting executor by which he could obtain his commissions, the surrogate's court has no jurisdiction to direct the repayment of that sum by the legatee to the executor who instituted the proceedings. It was said in this case, as in the case of Underhill, that, if it was desired that the surrogate should have a broader jurisdiction, it must be conferred by the legislature.

Those decisions would seem to be decisive of the question submitted to me as to the authority and jurisdiction of this court to direct any commissions whatever to be paid to James E. Ostrander by Charles W. Deyo, the present trustee. I can see no difference in principle in the application made here from that which might be made by any executor against an overpaid legatee for the recovery of said overpaid legacy, which a long line of decisions holds that the surrogate has no jurisdiction to compel the repayment of.

If any right to the payment of commissions upon the income exists, it must be asserted in another forum, with jurisdiction broad enough to enforce its decrees. It appears from the evidence that, from the time that Ostrander turned over the securities to the late Judge Schoonmaker, Schoonmaker retained his commissions, and no claim is made now by his executor for any commissions due him.

As to the matter of costs of the proceeding: It was held in an early case (In re Jones, 4 Sandf. Ch. 615), by the vice chancellor, decided in June, 1847, that, where a trustee resigned from his duties previous to the completion of his trust, the resigning trustee must pay the costs of the petition and of the appointment of his successor, and be allowed no commissions on the capital of the trust property; and this decision has been followed ever since. It is urged strongly on the part of the cestui que trust that Ostrander has already caused the estate considerable expense; that he did not resign, and proceedings were necessary to remove him, the cost of which proceeding was paid by the beneficiaries; that, if it is desirable that his account should be settled and adjusted, it should be done at his own expense. In a case decided in the general term of the supreme court in 1892 (In re Dixon, 21 N. Y. Supp. 343) it was held, the executors asking to be discharged, that "it was no more than just that they should not charge the estate with a special accounting. The executors had good reason to be discharged on their own request without fulfilling the trust, but it was equitable that their application should not cost the funds for an account which was only an incident to their discharge on their own request." If an executor or trustee who simply asked to be relieved from the trust cannot be so relieved without paying the costs of an accounting, this would seem to be a much stronger case, for no costs are allowed from the estate where the executor is removed by reason of his having voluntarily placed himself in such a position that he could not fulfill the duties of the trust committed to him. It makes little difference in this proceeding that no mismanagement of these funds was shown upon Ostrander's part. He is unable to complete the trust. The newly-appointed trustee will eventually have to have a judicial settlement of his accounts, the costs of which will properly be borne by the estate. It should not be subjected to double and unnecessary costs.

A decree may be handed up settling the accounts of the late executors and trustees in accordance with the evidence submitted, and providing that no commissions can be allowed by this court in this proceeding to James E. Ostrander, and denying the application on the part of his attorney and the attorney of Louise Schoonmaker for costs from the estate, and allowing the special guardian the sum of $50 for his costs, and the stenographer the sum of $15, payable from funds on deposit in the Ulster County Savings Institution.

Decreed accordingly.